Filed January 25, 1894.

---

No. 1,877.

## Johnson et al. *v.* Bedwell.

Appellate Procedure.—*Overruling Motion for New Trial.—Evidence Not in Record.*—An assignment that the court erred in overruling the motion for a new trial, will not be considered, when the evidence is not in the record.

Practice.—*Exception to Conclusions of Law.—Admits What Facts.* —An exception to conclusions of law, at least for the purpose of the exception, admits the correctness of the facts found, which properly came within the issues, but not those improperly found.

Deed.—*Acceptance.—Possession.—When Can Not Defeat Payment of Purchase-money.*— A grantee who accepts deed, and takes possession under it, cannot defeat payment of the purchase-money, without showing an eviction, the surrender of possession to the owner of a paramount title, or some other inconvenience or expense incurred on account of the defect in the title.

Fraud.—*Question of Fact.—Special Findings.*—Fraud is a question of fact, and must be found as a fact in the special findings, and not left to inference.

ESTOPPEL.— *Deed.*— *After-acquired Title by Grantor.*— *Imperfect Title in Grantee.*—A warranty deed, executed by a married woman and her husband, conveying her property, will, as a general rule, estop her from asserting an after-acquired title as against an imperfect title conveyed by her to her grantee; and such after-acquired title by the grantor inures to the benefit of the grantee in perfecting the imperfect title conveyed by her.

VENDOR AND PURCHASER.—*Rescission of Sale.*—*Real Estate.*—There can be no rescission of a sale of one of several tracts of land, sold as an entirety, without a rescission as to the other tracts.

From the Grant Circuit Court.

*G. W. Harvey* and *A. De Wolf,* for appellants.

*Ratliff & Cline* and *Carroll & Dean,* for appellee.

Ross, J.—This was an action brought by the appellee, against appellants, James Johnson and the Upland Land Company, upon a promissory note, executed by them to her. To the complaint the appellants answered: (1) A general denial. (2) No consideration. (3) No consideration for all in excess of $5.00, and that consideration in excess of $5.00 had failed. (4) Fraud. The plaintiff replied: (1) A general denial; and (2) that the title to the real estate, in the purchase of which the note sued on was given, had been perfected before the bringing of this action.

The court made a special finding of facts, with conclusions of law thereon, as follows:

1. The defendant, the Upland Land Company, is a corporation, organized under the laws of the State of Indiana, and existing since September, 1892, with its office and place of business at the town of Upland, in Grant county, Indiana, and engaged in the purchase and sale of real estate, in and adjacent to said town, and in promoting the location of factories on the real estate in and adjacent to the P., C., C. & St. L. R. W., which railway is the only railway at, or within, seven miles of the town of Upland.

2.   The defendant, James L. Williams, is the father of Cyrus Williams, John W. Williams, Amy A. Bedwell, and Thomas Williams, and was the owner of a certain tract of land situated in Grant county, State of Indiana, to-wit: the southeast quarter of section 3, township twenty-three north, range nine (9) east, containing 160 acres, more or less, excepting two tracts, described as follows, to-wit:

First Tract.   Commencing 56 rods north of the southwest corner of said quarter-section, running thence east 10 rods, thence north 16 rods, thence west 10 rods, thence south 16 rods, to the place of beginning, containing one acre.

Second Tract.   Commencing 104 rods north of the southwest corner of said quarter-section, running thence east 20 rods, thence north 12 rods, thence east 24 rods, thence north $37\frac{1}{2}$ rods, more or less, to the right-of-way of the P., C., C. & St. L. R. W., thence west on the south line of said right-of-way 44 rods, to the west line of said quarter-section, thence south on said line 53 rods and 12 feet, more or less, to the place of beginning, containing thirteen acres, more or less.

3.   Said James L. Williams conveyed to his children parts, or portions, of said tract of land as follows:

To Amy A. Bedwell and children, he conveyed a tract commencing 44 rods east of the northwest corner of the southeast quarter of section 3, township 23 north, range 9 east, and 42 feet south of the north line of the above described quarter-section, running 76 rods parallel with the railroad track, thence south 49 rods, thence west 100 rods, thence north 12 rods, thence east 24 rods, thence west 100 rods, thence north 12 rods, thence east 24 rods, thence north $37\frac{1}{2}$

rods to the place of beginning, containing 25 acres; it being a part of the southeast quarter of section 3, township 23 north, range 9 east.

To Cyrus Williams he conveyed a tract of land commencing 81½ rods west of the southeast corner of section 3, township 23 north, range 9 east, thence north 108 rods, thence west 37 rods and 1 link, thence south 108 rods, thence east 37 rods and 1 link, to the place of beginning, containing 25 acres, more or less; being a part of the southeast quarter of section 3, township 23 north, range 9 east.

To John W. Williams he conveyed a tract of land off the east end of the southeast quarter of section 3, township 23 north, range 9 east, said tract conveyed being bounded as follows: Beginning at the southeast corner of the southeast quarter of section 3, township 23 north, range 9 east, running thence north 160 rods, thence west 40 rods to the place of beginning, containing in all 40 acres, more or less.

To Thomas W. Williams, who conveyed it to Martha R. Williams, wife of his brother, John W. Williams, the following tract of land: Commencing 40 rods west of the southeast corner of section 3, township 23 north, range 9 east, thence running north 108 rods, thence west 41½ rods, thence south 108 rods, thence east 41½ rods, to the place of beginning, containing 28 acres, and being a part of the southeast quarter of section 3, township 23 north, range 9 east.

4. The said James L. Williams retained the ownership of the following described tract: Beginning at the southwest corner of the southeast quarter of section 3, township 23 north, range 9 east, thence north 56 rods, thence east 10 rods, thence north 16 rods, thence west 10 rods, thence north 32 rods, thence

east 20 rods, thence north 4 rods, thence east 21 rods, more or less, thence south 108 rods, thence west 41 rods, more or less, to the place of beginning, containing 26.62 acres, out of the southeast quarter of section 3, township 23 north, range 9 east.

5.   In the prosecution of its purpose, the said Upland Land Co., through its agent, John W. Pittenger, entered into negotiations with said John W. Williams, for the purchase of the said several tracts of said real estate, owned, as aforesaid, by James L. Williams, Cyrus Williams, Martha R. Williams, Amy A. Bedwell, and John W. Williams; and the said John W. Williams, acting in his own behalf, as to his tract, and as agent for said owners of the other four tracts, aforesaid, negotiated a sale of all of said five tracts of land to said Upland Land Company, through its said agent, John W. Pittenger, at and for the agreed price of nineteen thousand dollars ($19,000.00), for all of said tracts, the said John W. Williams refusing to sell any of said tracts to said Upland Land Company unless said company would buy them all.

Pursuant to said sale, said owners of the said several tracts conveyed the same, by deeds of general warranty, to the said Upland Land Company, and the terms as to payment and credit were made and agreed upon between said land company and said John W. Williams, acting in his own behalf and as agent for the other grantors.

6.   Said five tracts of land are located in said southeast quarter of section 3, township 23, north range 9 therein indicating rods, unless otherwise specified, and the street and railway extending along the lines of said land as indicated, said plat being as follows:

Johnson *et al. v.* Bedwell.

7. Through the lands, exhibited in the plat accompanying, finding six (6) herein, a curved ravine extends from the railroad, at the north end of John W. Williams' tract, and terminates near the middle of the west line of the James L. Williams tract, and includes upon its west side a part of the southeast corner of the Amy A. Bedwell tract, and divides the other tracts through which it passes, in such way as to leave 60 acres southeast, and 30 acres northwest of said ravine, and so as to make it practicable to construct a switch, or spur, from said railroad, leading into and over said 60-acre tract and entering upon the same over the northeast corner of the said John W. Williams tract, it being also practicable to construct like spurs and switches from said railroad over the Amy A. Bedwell tract to said 30-acre tract lying northwest of said ravine, but it being impracticable to construct switches and spurs over and across said ravine.

8. The real estate conveyed by said James L. Williams, to Amy A. Bedwell and children, as set out in finding three (3) herein, was thus conveyed on the 31st day of March, 1888, by deed of general warranty, duly acknowledged as follows:

"This Indenture Witnesseth, That James L. Williams and Nancy Williams, his wife, of Grant county, in the State of Indiana, do hereby convey and warrant to Amy A. Bedwell and children, of Grant county, in the State of Indiana, for the sum of $750.00, the following real estate in Grant county, in the State of Indiana, to-wit: Commencing 44 rods east of the northwest corner of the southeast quarter of section No. three (3), township No. 23 north, range nine (9) east, and 42 feet south of the north line of the above described quarter-section, running east 76 rods, parallel with the railroad track, thence south 49 rods, thence west 100 rods, thence north 12 rods, thence east

24 rods, thence north about $38\frac{1}{2}$ rods to the place of beginning, containing 25 acres, it being a part of the southeast quarter of section No. 3, township No. 23 north, range 9 east.

"Amy A. Bedwell is to pay one-fifth of the gravel-road tax each year assessed in the name of James L. Williams.

"There is never to be any spirituous, vinous or malt liquors sold on the above described real estate, or this title will be forfeited.

"In witness whereof, the said James L. Williams and Nancy Williams, his wife, have hereunto set their hands and seals, this 31st day of March, 1888.

[SEAL]                      "JAMES L. WILLIAMS.

[SEAL]                 "NANCY [ Her X mark. ] WILLIAMS.

"STATE OF INDIANA, } ss:
  GRANT COUNTY,

"Before me, Jos. E. Ballinger, a notary public in and for said county, this 31st day of March, 1888, James L. Williams and Nancy Williams, his wife, acknowledged the execution of the annexed deed.

"Witness my hand and notarial seal.

[SEAL]   •         "JOS. E. BALLINGER,
                                 Notary Public.

"Notary Public,

"J. E. BALLINGER, Upland, Indiana."

And said deed was, on the 31st day of March, 1888, duly recorded in the office of the recorder of Grant county, Indiana.

9. The agreed consideration for the whole lot of land was $19,000.00, out of which it was agreed that $230.00 should be retained by the Upland Land Company, on account of a school fund mortgage on part of the real estate, and it was agreed that notes should be executed and cash paid for the balance.

Pursuant to said agreement, cash was paid to the respective grantors, and notes executed to them by the said Upland Land Company; and payments in cash were made as follows: To James L. Williams, $3,380.00; to Cyrus Williams, $1,090.00; to Amy A. Bedwell, $500.00; to John W. Williams, $3,400.00. And notes were executed to said grantors as follows: To John W. Williams, one note for $1,500.00, due July 29, 1893; and one for $1,860.00, due October 29, 1893, and one note for $1,860.00, due April 29, 1894, which are the same three notes in suit in this case; to Cyrus Williams, one note for $1,500.00, due August 29, 1893, and one note for $600.00, due April 29, 1894; to Amy A. Bedwell, one note for $1,000.00, due October 29, 1893, and one note for $2,000.00, due April 29, 1894; and all of said notes were signed by the Upland Land Company, by David Lyon, president, Thomas B. Lyon, secretary; and said notes were also signed by the defendant, James Johnson; and said Upland Land Company also paid off said school fund mortgage to the amount of $230.00, and said payments were made and said notes given at the special instance and request of said grantors.

10.    The said deed of conveyance of the said Amy A. Bedwell tract was executed by her and her husband, Charles M. Bedwell, to the Upland Land Company, on the 28th day of April, 1893, and the same was acknowledged by her and her husband before William T. Smith, a notary public of Grant county, Indiana, on said day, said deed being as follows:

"This Indenture Witnesseth, that Amy A. Bedwell and Charles M. Bedwell, her husband, of Grant county, and State of Indiana, convey and warrant to the Upland Land Company, of Grant county, and State of Indiana, for the sum of thirty-five hundred

dollars ($3,500.00), the following real estate in Grant county, in the State of Indiana, to-wit:

"Commencing 44 rods east of the north corner of the southeast quarter of section No. three (3), township No. twenty-three (23) north, range nine (9) east, and 42 feet south of the north line of above described quarter-section, running east seventy-six (76) rods, parallel with railroad track, thence south forty-nine (49) rods, thence west one hundred (100) rods, thence north twelve (12) rods, thence east twenty-four (24) rods, thence north about thirty-seven and one-half ($37\frac{1}{2}$) rods, to the place of beginning, containing twenty-five (25) acres, it being a part of the southeast quarter of section three (3), township twenty-three (23) north, range nine (9) east.

"In witness whereof, the said Amy A. Bedwell and Charles M. Bedwell, her husband, have hereunto set their hands and seals, this 28th day of April, 1893.

[Seal]                    "Amy A. Bedwell.
[Seal]                    "Charles M. Bedwell.

"State of Indiana, } ss:
  Grant County,    }

"Personally appeared before me, William T. Smith, a notary public in and for said county and State, Amy A. Bedwell and Charles M. Bedwell, who acknowledged the execution of the annexed deed to be their voluntary act and deed.

"Witness my hand and official seal, this 28th day of April, 1893.

[Seal]                    "William T. Smith,
                              Notary Public."

The deed set out and mentioned in finding No. 8 was executed prior to the execution of the aforesaid deed from Amy A. Bedwell and her husband, to the Upland

Land Company, and said deed, in finding No. 8 mentioned, had been delivered to the Upland Land Company, before said deed to the Upland Land Company was executed, and was used by the notary in drafting said deed from Amy A. Bedwell to the said Upland Land Company, for the purpose of obtaining therefrom a description of the real estate to be incorporated in said deed from said Amy A. Bedwell to said Upland Land Company; that said deed was so delivered at the Upland Bank, during the pendency of the negotiations for the purchase and sale of the land in question, and was then in said bank with the knowledge of said John W. Pittenger, the office of said Upland Land Company and its place of business, being at said bank at the time of the negotiation and sale and transfer of said real estate to said Upland Land Company.

Said John W. Williams made no representations to said Upland Land Company, nor to said John W. Pittenger, as to the extent of the title, or ownership, of the said Amy A. Bedwell in said real estate, for which she executed said deed to said company, and said John W. Williams did not intend to defraud said company in the sale and transfer of said real estate to said company.

The said grantors had knowledge, at and during the said negotiations for the purchase and sale of said real estate, of the purpose of said Upland Land Company in purchasing the same, but none of said grantors, except Amy A. Bedwell, had any interest in said real estate, conveyed by her to the said land company, at the time it was conveyed by the deed set out in this finding.

11.    Upon the execution and delivery, by the said grantors, of the deeds by them to the said Upland Land Company, as elsewhere stated in these findings,

said Upland Land Company took possession, under said deeds of the real estate in question, and in said deeds described, and said company has remained in possession of said real estate, under said deeds, ever since possession was thus taken by them of the said real estate, and were in possession of said real estate, under said deeds, long prior to the 31st day of May, 1894, and are still in possession of said real estate.

Said real estate, at the time of the conveyance of the same to the Upland Land Company, was of the value of $19,000.00, for the purposes for which the same was purchased by said company, but for farming purposes, was of the value of $50.00 per acre. This action was begun August the 6th, 1894.

11½. The Upland Land Company made no examination of the records in the office of Grant county, Indiana, to ascertain the title of Amy A. Bedwell to the land conveyed by her to said company, as aforesaid, until three months or more after she had so conveyed said real estate by deed to said company, and said company had taken possession of said real estate.

12. The fact that Amy A. Bedwell and children are named as grantees in the deed to Amy A. Bedwell from her father, James L. Williams, as appears from said deed in finding eight (8), was not known by said John W. Williams, nor by John W. Pittenger, until after the deeds to all said lands conveyed to the said Upland Land Company had been executed and delivered by the several grantors, and said Upland Land Company had taken possession under said deeds, but the said Amy A. Bedwell had knowledge of that fact before she conveyed the lands, therein described, to said Upland Land Company.

13. At the time that James L. Williams and Nancy Williams executed to Amy A. Bedwell and children the conveyance for the real estate, afterward con-

veyed by her to the Upland Land Company, as set forth in these findings, she had only two children in being, namely: Roscoe Bedwell and Christa Bedwell.

Said deed to said Amy A. Bedwell and children, by her father, James L. Williams, was executed March 31, 1888.

14. On the 8th day of July, 1893, the Upland Land Company, by deed of general warranty, conveyed to James Johnson all the real estate previously conveyed to the Upland Land Company by the grantors aforesaid, with other lands, said deed by said Upland Land Company to said James Johnson being as follows:

"This Indenture Witnesseth, that the Upland Land Company, by David Lyon president, and Thomas B. Lyon secretary, of Grant county, in the State of Indiana, convey and warrant to James Johnson of Grant county, Indiana, for the sum of $32,000.00, the following described real estate, situate in county of Grant, in the State of Indiana, to-wit:

"Commencing at the southwest corner of the southeast quarter of section three (3), township twenty-three (23) north, range nine (9) east, running thence north on the west line of said quarter-section fifty-six (56) rods, thence east ten (10) rods, thence north sixteen (16) rods, thence west ten (10) rods, thence north thirty-two (32) rods, thence east twenty (20) rods, thence north sixteen (16) rods, thence east twenty-four (24) rods, thence north thirty-seven and a half (37½) rods, more or less, to the right-of-way of the P., C., C. & St. L. railroad, thence east along the right-of-way of the P., C., C. & St. L. railroad one hundred and sixteen (116) rods, thence south one hundred and fifty-nine (159) rods to the southeast corner of said quarter-section, thence west one hundred and sixty (160) rods, more or less, to the place of beginning, containing 144

acres, more or less, being a part of the southeast quarter of section three (3), township twenty-three (23) north, range nine (9) east; also the southeast quarter of the northeast quarter of section four (4), township twenty-three (23) north, range nine (9) east, containing 40 acres, more or less; also the southwest quarter of the northwest quarter of section three (3), township twenty-three (23) north, range nine (9) east, containing 40 acres, more or less, except the right-of-way of the P., C., C. & St. L. R. R. Co.; also the north half of the southwest quarter of section ten (10), township twenty-three (23) north, range nine (9) east, except ten acres out of the northeast corner, reserved for Taylor University, containing 70 acres, more or less.

"In witness whereof, the said Upland Land Company, by David Lyon, president, and Thomas B. Lyon, secretary, have hereunto set their hands and seals, this 8th day of July, A. D. 1893.

[Seal]                    "THE UPLAND LAND COMPANY.

[Seal]                    "DAVID LYON, Pres.

"Attest: THOMAS B. LYON, Sec'y.        [Seal]

"STATE OF INDIANA, }
    GRANT COUNTY,    } ss.

"Before me, William T. Smith, a notary public in and for said county and State, personally appeared the Upland Land Company, by David Lyon, president, and Thomas B. Lyon, secretary, and acknowledged the execution of the within warranty deed to be their voluntary act and deed.

"Witness my hand and official seal, this 8th day of July, 1893.

[Seal]                    "WILLIAM T. SMITH,
                                    Notary Public.

"Recorded July 10, 1893, at 7:30 o'clock a. m."

And said James Johnson and Elizabeth Johnson,

his wife, subsequently, to-wit, on October the 2d, 1893, executed to the Etna Life Insurance Company, a mortgage upon all of said real estate, conveyed by said grantors to the Upland Land Company, except the said real estate formerly conveyed to the Upland Land Company by said Amy A. Bedwell.

On the 21st day of June, 1894, John W. Williams, guardian of the said Roscoe Bedwell and Christa Bedwell, who are minors under the age of twenty-one years, petitioned the Grant Circuit Court for an order to sell the undivided two-thirds (2-3) of the real estate alleged by him in his petition to belong to said Roscoe and Christa Bedwell, and described as follows:

"Commencing forty-four (44) rods east of the north-west corner of the southeast quarter of section No. three (3), township No. twenty-three (23) north, range nine (9) east, and forty-two (42) feet south of the north line of the above described quarter-section, running east seventy-six (76) rods parallel with the railroad track, thence south forty-nine (49) rods, thence west one hundred (100) rods, thence north twelve (12) rods, thence east twenty-four (24) rods, thence north about thirty-eight and one-half (38½) rods to the place of beginning, containing twenty-five (25) acres, it being a part of southeast quarter of section No. three (3), township No. twenty-three (23) north, range nine (9) east."

Said real estate being the same real estate described in the deed set forth in finding eight herein.

Appraisers were appointed by said court, and appraisement by them filed, and an additional bond filed by said guardian, and approved by the court, and such other proceedings had as that the court ordered the sale of said real estate at private sale, and, pursuant to said order, the same was sold to Amy A. Bedwell, and report of sale made to court, and approved

by the court, and the deed ordered made therefor to said Amy A. Bedwell, which deed was executed by said guardian, and reported to said court, and approved by said court on June 23, 1894, delivered, and subsequently recorded in the office of the recorder of Grant county, Indiana, on June 28, 1894, which said deed is as follows:

"John W. Williams, guardian of Roscoe Bedwell and Christa Bedwell, minor children of Amy A. Bedwell, as such guardian, by order of circuit court of Grant county, in the State of Indiana, entered in Probate Order Book 9, of said court, on page 186, convey to Amy A. Bedwell, of Grant county, in the State of Indiana, for the sum of $2,000.00, the following real estate in Grant county, in the State of Indiana, to-wit:

"The undivided two-thirds of the following real estate: Commencing forty-four (44) rods east of the northwest corner of the southeast quarter of section three (3), township twenty-three (23) north, range nine (9) east, and forty-two (42) feet south of the north line of the above described quarter-section, thence east seventy-six (76) rods, parallel with the railroad track, thence south forty-nine (49) rods, thence west one hundred (100) rods, thence north twelve (12) rods, thence east twenty-four (24) rods, thence north thirty-eight and one-half (38½) rods to the place of beginning, containing twenty-five acres, more or less.

"In Witness Whereof, the said John W. Williams, guardian, as aforesaid, has hereunto set his hand and seal, this 23d day of June, 1894.

JOHN W. WILLIAMS, Guardian.    [SEAL.]

"Examined and approved in open }    JOSEPH L. CUSTER,
     court June 23, 1894.     } Judge of the Grant Circuit Court.

"STATE OF INDIANA, ⎫
                        ⎬ *Sct.*
GRANT COUNTY.     ⎭

"Before me, Wilson Addington, clerk of Grant Circuit Court, in and for said county, this 23d day of June, A. D. 1894, John W. Williams, guardian of Roscoe Bedwell and Christa Bedwell, minor children of Amy A. Bedwell, as such guardian, acknowledged the execution of the annexed deed.

"Witness my hand and official seal.

                        WILSON ADDINGTON,
⎧ G. C. C. ⎫      Clerk Grant Circuit Court.    [SEAL.]
⎩   SEAL.  ⎭      CHARLES A. LILLIBRIDGE, R. G. C.

"Recorded June 28, 1894, at 3:35 p. m."

15.    On June 16, 1894, the said Upland Land Company and James Johnson filed their cross-complaint in the case of John W. Williams against the Upland Land Company, being in case No. 6451, then pending in this court, and subsequently, on February 18, 1895, refiled thereon said cross-complaint as amended, seeking to cancel all the notes given by said Upland Land Company to said grantors, and to recover the cash payments made upon said real estate, and the defendants in this case were made cross-defendants in said cross-complaint, and said cross-complainants sought, by said cross-complaint, to cancel said notes and recover back said cash payments made, because of certain alleged fraudulent representations set out in said cross-complaint, and which are the same fraudulent representations alleged by the said Upland Land Company and James Johnson, as are set forth in the 4th paragraph of the answer of said Upland Land Company, and said Johnson filed in this case, and upon which the said Upland Land Company and James Johnson seek to cancel and declare void the notes sued

on in this case. Said cross-complaint, in said cause No. 6451, pleads a tender from said Upland Land Company to Martha R. Williams, John W. Williams, Cyrus Williams, James L. Williams, and Amy A. Bedwell, of a reconveyance, by deeds of general warranty, of the lands conveyed by them, respectively, to the said Upland Land Company, and the said Upland Land Company and James Johnson, by their fourth paragraph in this case plead their previous tender set forth in said cross-complaint. At the time of the filing of said cross-complaint, in said cause No. 6451, said deeds were brought into court, in said cause, by counsel for the cross-complainants, and immediately taken back to his office for safe keeping, but said deeds were not, nor were any of them, ever tendered to said grantors, or any of said grantors, before the trial of this cause, but during the trial of this cause tender was made of said deeds of reconveyance in open court.

Said deeds of reconveyance are dated and acknowledged June 11, 1894, and are signed by the Upland Land Company, David Lyon, president, Thomas B. Lyon, secretary, and the deed of reconveyance to Amy A. Bedwell is as follows:

"This Indenture Witnesseth, that the Upland Land Company, by David Lyon, president, and Thomas B. Lyon, secretary, of Grant county, Indiana. convey and warrant to Amy A. Bedwell, of Grant county, in the State of Indiana, for the sum of thirty-five hundred ($3,500.00) dollars, all the interest, right and title in the following real estate, in Grant county, in the State of Indiana, which said Upland Land Company had conveyed and warranted to it by the said Amy A. Bedwell and Charles M. Bedwell, her husband, on the 28th day of April, 1893, described as follows, to-wit:

"Commencing forty-four (44) rods east of the north-

west corner of the southeast quarter of section three (3), township twenty-three (23) north, range nine (9) east, and forty-two (42) feet south of the north line of said section three (3), thence east seventy-six (76) rods, parallel with the P., C., C. & St. L. R. W., thence south forty-nine (49) rods, thence west one hundred (100) rods, thence north twelve (12) rods, thence east twenty-four (24) rods, thence north about thirty-seven and one-half (37½) rods to the place of beginning, containing twenty-five (25) acres, it being a part of the southeast quarter of section three (3), township twenty-three (23) north, range nine (9) east.

"In witness whereof, the said Upland Land Company, by David Lyon, president, and Thomas B. Lyon, secretary, has hereunto set its hand and seal, this 11th day of June, A. D. 1894.

> "THE UPLAND LAND CO.    [SEAL.]
> DAVID LYON, Pres.    [SEAL.]
> THOMAS B. LYON, Sec.    [SEAL.]

"STATE OF INDIANA, } ss.
    GRANT COUNTY. }

"Before me, the subscriber, a notary public, in and for said county, this 11th day of June, 1894, personally appeared the Upland Land Company, by David Lyon, president, and Thomas B. Lyon, secretary, and acknowledged the execution of the annexed deed.

"Witness my hand and notarial seal.

{ NOTARY PUBLIC.
    SEAL.         }    GRANT A. DENTLER. [SEAL.]"
    INDIANA.    }

And all of said deeds are similarly signed.

16. On April 29, 1893, the defendants, James Johnson and the Upland Land Company, executed to Amy A. Bedwell, plaintiff in this case, their promissory note, set out in the complaint and made a part

thereof, for $1,000.00, payable one year after date, with 6 per cent. interest from date until paid, and attorney's fees; that there is due and unpaid on said note, of principal and interest, the sum of $1,129.00, and the further sum of $70.50 attorney's fees, for services of plaintiff's attorney in this cause, which sum of $70.50 is a reasonable compensation for such services, and is due and unpaid, making in all due and unpaid upon said note the sum of $1,199.50, all of which is payable without relief from valuation or appraisement laws. Said note was given in part consideration for the real estate conveyed by the aforesaid grantors to the Upland Land Company, as heretofore set out in these findings, said note being one of the same notes hereinbefore found to have been given for said real estate by said Upland Land Company and said James Johnson.

"JOSEPH L. CUSTER,

"Judge of the Grant Circuit Court.

"June 22, 1895."

Upon the facts aforesaid, the court pronounces the following conclusions of law:

1. That the notes in suit in this case are valid, and the plaintiff is entitled to recover thereon from the defendants, James Johnson and the Upland Land Company, the sum of $1,199.50, including $70.50 attorney fees, without relief from valuation or appraisement laws.

2. That the defendants, James Johnson and the Upland Land Company, are not, nor is either of them, entitled to recover or recoup, any damages herein, nor to cancellation of the notes in suit.

3. That the defendants, James Johnson and the Upland Land Company, are not, nor is either of them, entitled to recover in this action for any purchase-

money paid by them, or either of them, for the real estate described in their answer and cross-complaint in said action.

"JOSEPH L. CUSTER,

"Judge of the Grant Circuit Court.

"June 22, 1895."

The specifications of error assigned are: First, that the court erred in its conclusions of law; second, that the court erred in overruling the appellants' motion for judgment in their favor on the said findings; third, that the court erred in overruling the appellants' motion for a new trial.

The second specification is not well taken, for the reason that the record does not show any motion by the appellants for judgment in their favor on the facts found. And, under the third specification, the one question arising relates to the evidence, which is not in the record, hence, that specification cannot be considered.

At the proper time, the appellants excepted to the conclusions of law, which presents the only question properly before us. The exception to the conclusions of law, at least for the purposes of the exception, admits the correctness of the facts found. *Wynn* v. *Troy*, 109 Ind. 250. This admission, however, is limited to the facts properly found. It is not an admission of the truthfulness of facts improperly found, but only of such as it is proper to find as coming within the issues. Hence, facts found which are not within the issues are improperly found, and cannot be considered in determining the rights of the parties.

At common law, a married woman could not be bound by her covenants of warranty in a deed of conveyance executed by her and her husband for her

separate property. *Griner* v. *Butler,* 61 Ind. 362; *Trent-man* v. *Eldridge,* 98 Ind. 525.

But her deed of conveyance did operate to convey to the grantee the title which she then held, and to that extent she was estopped thereby.

Section 5118, R. S. 1881 (section 6963, Burns' Rev. 1894), specially provides that "a married woman shall be bound by her covenants of title in conveyances of her separate property, as if *sole.*" *Marsh* v. *Thompson,* 102 Ind. 272.

The appellants seek to defeat the payment of the purchase-money upon the theory that at the time the appellee made the conveyance to the appellant land company, her title thereto was imperfect.

Our adjudications universally hold that where a deed of conveyance for real estate is accepted by the grantee, and he takes possession under it, he cannot defeat a payment of the purchase-money without showing an eviction, the surrender of possession to the owner of a paramount title, or some inconvenience or expense incurred on account of the defect in the title. *Wimberg* v. *Schwegeman,* 97 Ind. 528, and cases cited; *Grubbs* v. *Barber,* 102 Ind. 131; *Marsh* v. *Thompson, supra,* and cases cited.

Neither does the finding of the court sustain the issue of fraud. Fraud is made a question of fact by the statute, section 4924, R. S. 1881 (section 6649, Burns' Rev. 1894), and must be found as a fact in the special finding, and not left to inference. *Rose* v. *Colter,* 76 Ind. 590; *Elston* v. *Castor,* 101 Ind. 426; *Stix* v. *Sadler,* 109 Ind. 254; *Caldwell* v. *Boyd,* 109 Ind. 447; *Phelps* v. *Smith,* 116 Ind. 387; *Wilson* v. *Campbell,* 119 Ind. 286; *Farmers' Loan, etc., Co.* v. *Canada, etc., R. W. Co.,* 127 Ind. 250 (11 L. R. A. 740).

It is well settled that a deed of conveyance, containing covenants of warranty, will, as a general rule, estop the grantor from asserting an after-acquired title as against an imperfect title conveyed by him to his grantee. *Locke* v. *White*, 89 Ind. 492. And such after-acquired title by the grantor inures to the benefit of the grantee in perfecting the imperfect title conveyed. *Randall* v. *Lower*, 98 Ind. 255, and cases cited.

The sale to the Upland Land Company included not only the tract conveyed by the appellee, but also the tracts conveyed by James L. Williams, Cyrus Williams, Martha R. Williams and John W. Williams. The five tracts were sold together for the agreed price of $19,000.00. This was the price agreed to be paid for the five tracts collectively, and no value or price was agreed upon for any one tract. The five tracts having been sold as an entirety, there could be no rescission except as to it all. No facts are found warranting a rescission.

The conclusions of law, upon the facts found, are right.

Judgment affirmed.

Filed March 5, 1896; petition for rehearing overruled May 6, 1896.