THOMPSON ET AL. *v.* FESLER ET AL.

[No. 9,799. Filed April 22, 1919. Rehearing denied June 27, 1919. Transfer denied November 11, 1920.]

1. APPEAL.—*Review.—Admission of Evidence.—Harmless Error.* —In an action tried by the court, the admission of evidence, if error, *held* harmless where the judge ignored it in making his special findings. · p. 84.

2. NEW TRIAL.—*Grounded Upon Admission of Evidence.—Judgment and Conclusions of Law Based on Findings Ignoring the Evidence.*—Where the judgment and conclusions of law are

based solely upon the facts as found by the court and not upon the evidence whose admission is complained of by motion for new trial, it is not error to overrule such motion. p. 85.

3. CONTRACTS.— *Rescission.*— *Partial Rescission.*— *Severable or Divisible Contracts.*—Unless a contract is clearly divisible or separable, there can be no partial rescission thereof, and, when legal grounds to cancel exist, must be rescinded *in toto* or not at all, but when a contract is divisible into a number of independent elements or transactions, and good cause for rescission exists as to one part, it may be rescinded, and the rest of the contract affirmed. p. 90.

4. CONTRACTS.— *Divisibility.*— *Construction.*— *Intent of Parties.* —*Test.*—The usual test of the severability of a contract is the entirety or divisibility of the consideration, and the intention of the parties, gathered from the terms and provisions of the contract, will control, the test chiefly relied on being whether the parties have apportioned the consideration on the one side to the different covenants on the other. p. 91.

5. VENDOR AND PURCHASER.—*Rescission.*—*Burden of Proof.*— Where plaintiff claimed rescission as to part of the contract on the ground that an equity in property taken in exchange as part of the purchase price, and represented as being $400 was not such in fact, the burden was on plaintiff to show fraud sufficient to authorize a rescission. p. 97.

6. VENDOR AND PURCHASER.—*Contract of Sale.*—*Divisibility.*— *Partial Rescission.*—A contract for the sale of land whereby the seller was to receive an equity in other property as $400 of the cash payment, the remainder to be paid by installments, constituted one entire contract, and could not be rescinded as to such equity and affirmed as to the remainder. p. 99.

From Marion Circuit Court (23,029); *Louis B. Ewbank,* Judge.

Action by Joseph W. Thompson and another against Leo K. Fesler and another. From a judgment for defendants, the plaintiffs appeal. *Affirmed.*

*Samuel D. Miller, Frank C. Dailey* and *William H. Thompson,* for appellants.

*Joseph W. Hutchinson* and *Emsley W. Johnson,* for appellees.

McMAHAN, J.—Appellants, Joseph W. Thompson and Georgiana H. Thompson, commenced this action against

Leo K. Fesler and Flora B. Fesler, appellees, to recover a balance alleged to be due on a contract whereby appellants sold, and appellee Leo K. Fesler agreed to buy, certain real estate in Indianapolis and known as lot 274, Morton Place. The real estate was conveyed to appellees, who are husband and wife. The complaint seeks to have the amount charged as a lien upon the real estate, and alleges that, as payment of $400 of the purchase price of said real estate, appellee Leo K. Fesler agreed to transfer to appellants an equity of $400 in lot 230 in Osgood's Park addition to the city of Indianapolis; that he never in fact had an equity of $400 in said lot; and appellants seek to recover the balance of $400 and interest due on the purchase price of the real estate conveyed by them to appellees.

The controversy in this case arises out of a sale by which appellants, Joseph W. Thompson and his wife, sold and conveyed to the appellees said lot 274, Morton Place. The particular question to be decided arises directly upon the agreement between the appellants and appellees as to the method of payment for the property conveyed. No question is raised as to this conveyance, its effect or validity, but the point in issue, aside from the question of rescission and that relating to the erroneous admission of evidence, is whether or not appellee Leo K. Fesler has paid the consideration for the property according to the terms of the written contract of sale by which he obligated himself to make certain payments for the Morton Place property. In this connection the single question for our consideration is narrowed to the cash payment agreed to be made by the appellees as a part consideration for said property. The particular part of the contract which we are called upon to construe reads as follows:

"The buyers agree to pay to the sellers for said real estate, subject to a first mortgage of Two

Thousand Dollars, to the Marion Trust Company of Indianapolis, Indiana, the sum of Three Thousand Dollars; said Three Thousand Dollars, payable *Eight Hundred Dollars, in cash on the execution of this agreement and said cash payment shall be made and received in the following manner, Four Hundred Dollars, in cash on the execution of this agreement and the sellers agree to accept an equity which belongs to the buyers, in Lot No. Two Hundred Thirty, in Osgood's Park Addition to the City of Indianapolis, Marion County, Indiana, said equity amounting to Four Hundred Dollars, and said sellers accept said equity as said Four Hundred Dollars cash payment.*

"Commencing with May 1, 1912, the buyers agree to pay the sellers the sum of Thirty-Five Dollars, per month for twelve months. On May 1, 1913, the buyers agree to pay to the sellers the sum of Three Hundred Dollars; that thereafter on May 1 each succeeding year following the buyers shall pay to the sellers the sum of Five Hundred Dollars, until Three Thousand Dollars, has been paid; said Three Thousand Dollars, to be the sum total of all previous payments made to that date, not including interest payments.

"The sellers agree contemporaneously with the signing of this agreement to convey to the buyers the aforesaid real estate by warranty deed, subject only to the aforesaid Two Thousand Dollar Mortgage to the Marion Trust Company; subject also to all taxes and municipal assessments after the year 1912. The buyers herewith agree to execute to the sellers a second mortgage upon said described real estate covering all deferred payments on said real estate, all of said deferred payments coming due after May 1, 1913, are to draw interest at six per cent per annum, payable semi-annually. * * * All of said semi-annual interest payments shall be paid by said buyers to said sellers in addition to the aforesaid monthly and yearly payments."

The cause was tried by the court. The court found the facts specially, and stated its conclusions of law thereon to the effect that appellants take nothing, and judgment followed the conclusions of law.

Appellants filed their separate and also their joint motion for a new trial. Each of these motions contained fourteen specifications, which are identical in each motion. The only specifications presented on this appeal are that the court erred in the introduction of certain evidence.

The errors assigned are:    (1) The overruling of the motion for a new trial; (2, 3) that the court erred in its conclusions of law Nos. 1 and 2. The remaining assignments, Nos. 4, 5, 6, 7 and 8, all relate to the alleged errors of the court in its conclusions of law. The errors assigned by each appellant are identical in form and will be considered together.

Two witnesses, Thomas F. Carson and Linton A. Cox, on their direct examination, while testifying in behalf of appellees, were, over the objection of appellants, permitted to testify as to the value of said lot 230. Mr. Carson testified that the lot was worth $1,525, and Mr. Cox testified that it was worth from $1,575 to $1,600.

The appellants contend that the admission of this evidence was error; that the value of said lot was not in issue; that the only question was the value of appellee's equity or estate in said lot. Appellants urge that the question in controversy is the extent of the equity of Leo K. Fesler, whether in fact he had a $400 equity in the lot; that this equity was the interest Fesler had in the lot under his contract of purchase from the College Park Land Company, and that this equity or estate depended on the amount paid on the contract, and not on the value of the lot.

The admission of this testimony, if error, was harmless, as the court ignored it in making the special findings. The court failed to make any finding as to the value of the lot other than to find that nothing had been proved or attempted to be proved as to the actual value

of said lot 230 in Osgood's Park addition, or of the
actual value of the appellee Leo K. Fesler's interest
therein at the time said contract was entered into, nor
at any other time, except so far as the several con-
tracts entered into may constitute admissions of such
values on April 28, 1909, and on December 7, 1912.

The judgment and the conclusions of law are based
solely upon the facts as found by the court, and
2. not upon the evidence. There was therefore no
error in overruling the motion for a new trial.

The facts, as found by the court, are substantially as
follows:

In April, 1909, appellee Leo K. Fesler entered
into a contract with the College Park Land Com-
pany for the purchase of Lot 230 in Osgood's For-
est Park addition to the city of Indianapolis for
$1,325, payable as follows: $20 cash and $10 per
month, with six per cent. interest payable semi-
annually until the purchase price was paid in full.
This contract was executed in printed form and in
a small passbook containing blank pages for the
entry of payments and made therefor, this passbook
being held and retained by said purchaser to be pre-
sented when payments were made. That appellee
Leo K. Fesler made the $10 payments each month
up to and including July, 1912, making a total of
$400, and no more, paid by him on said contract.

That prior to and during the years of 1911 and
1912, until the execution of the deed, as hereinafter
stated, Joseph W. Thompson was the owner in fee
simple of lot No. 274 in Morton Place, an addition
to the city of Indianapolis, Indiana, and on which
lot there was during all of said time a valuable
residence. That on December 7, 1912, the appel-
lants and the appellee Leo K. Fesler, pursuant to
negotiations made prior thereto, entered into a con-
tract, in which appellants agreed to sell said Morton
Place property to appellees, and appellees agreed
to pay therefor in accordance with the terms and
conditions as stated in that part of the contract
hereinbefore set out.

Pursuant to negotiations and with a view of pur-

chasing the property, appellees took possession of the Morton Place property on May 1, 1912, and occupied the same until the execution of the above-mentioned contract of sale and purchase, and thereafter continued to occupy the same, and have ever since December 14, 1912, owned and held the same as their property. That on December 14, 1912, the appellants, by their warranty deed of that date, conveyed the Morton Place lot to the appellees as husband and wife. That thereupon said appellee Leo K. Fesler executed his certain promissory notes for the installments of purchase money, secured by a second mortgage in which his wife joined, and paid the appellants the sum of $400 in cash, all as provided in the written contract of sale and purchase. That thereupon said appellee Leo K. Fesler, by a written transfer and assignment in which his wife joined, transferred and assigned to Joseph W. Thompson the said contract of sale and purchase with the said College Park Land Company of said lot No. 230; that said College Park Land Company, by its written indorsement, consented to said assignment and transfer by Leo K. Fesler to Joseph W. Thompson. And the appellees thereafter paid such of the monthly installments of purchase money for which said notes secured by said second mortgage were so given as by their terms matured.

That prior to May 1, 1912, and from that date to the present time, the appellants resided in the city of Washington, District of Columbia. That on or after the time appellees took possession of the Morton Place residence it was agreed between Joseph W. Thompson and Leo K. Fesler that the latter should retain the passbook, and from certain monthly payments to be made on the Morton Place property by said Fesler, he was to make the monthly payments of $10 to the land company on the purchase price of lot 230, for and on behalf of Joseph W. Thompson, on the contemplated assignment to and acceptance by him of Fesler's contract of purchase with the land company, all of which payments were to be properly adjusted on the final execution of said contract of sale and purchase and the execution of the deed by appellants to appellees for the Morton Place property. That Leo K. Fesler did retain said passbook from May 1,

1912, to December 15, 1912, and made five monthly payments of $10 each on the purchase price of said lot 230, for and on behalf of Joseph W. Thompson and that all of said payments made by said Fesler were, on the execution of the deed and mortgage, adjusted and properly credited as part payment of the purchase price of the Morton Place property, and said Fesler was properly credited with all sums paid by him on behalf of appellant Joseph W. Thompson on said lot 230. That after the execution of the said contract of sale and purchase, and after the execution of the deed by appellants to appellees for the Morton Place property, and after the execution of the mortgage securing the notes for the unpaid purchase price of the Morton Place property, Mr. Fesler forwarded said passbook to Mr. Thompson, at the city of Washington.

At the time the contract was entered into between the appellants and appellee for the purchase of the Morton Place property, appellee had paid the College Park Land Company on the contract for the purchase of lot 230 in Osgood's Forest Park the sum of $400, in thirty-seven installments, and there was still unpaid of the purchase price of said last-described lot, under said contract of purchase, the sum of $1,125.30, and the payments made by said Fesler had only reduced his debt for the contract price of $1,325 in the sum of $199.70, in addition to paying the accrued interest on said debt.

Mr. Fesler made no representation or statement as to the amount he had paid on the purchase price of said lot 230 or as to the balance of the purchase money remaining unpaid, other than that he "had an equity of $400" in said lot, and he made that statement without any fraudulent intent and in the belief that such statement was true.

Neither of the appellants ever saw or inspected said passbook until the same was received by Joseph W. Thompson about December 18, 1912, and that the passbook showed the payment of thirty-seven installments amounting to $400; but did not show anything in regard to whether said payments had been applied upon the principal of the debt or the interest thereon. The appellee Leo K. Fesler, had not, in fact, made any payments on or under his contract except the thirty-seven payments, aggre-

gating $400. Neither of appellants had actual knowledge that no other payments by way of interest or otherwise had been made by appellee Leo K. Fesler on the purchase price of said lot, in addition to those entered in the passbook, until about March 10, 1913, when they learned that said payments aggregating $400 were all the payments that had been made, and that those had been applied by the College Park Land Company as partial payments to the discharge of the accrued interest, and after that was satisfied to the payment of the prinicpal debt.

After the receipt of said passbook appellant Joseph W. Thompson paid to the College Park Land Company under the assignment of the Fesler contract with the College Park Land Company the sum of $10 in January, $10 in February and $15 in March, 1913. Out of the $400 paid by Mr. Fesler on lot 230 the land company applied a sum sufficient to pay and satisfy the several installments of interest, but such application was not shown in the passbook.

The appellant Joseph W. Thompson, upon the receipt of the information from the land company about March 10, 1913, that Leo K. Fesler had not paid the sum of $400 on the purchase price of said lot and upon obtaining actual knowledge that the land company had applied the payments made by appellee Leo K. Fesler on the Forest Park lot, as shown by the said passbook, to the discharge and liquidation of the semiannual installments of interest due, and the balance (only) upon the principal debt, notified the appellees that he rescinded the agreement to accept the alleged equity of $400 in the Forest Park lot, and immediately notified appellees that he rescinded and canceled the assignment so made by appellee Leo K. Fesler of his contract with the College Park Land Company, and thereupon reassigned the assignment of said contract and entered in the passbook and in connection with the assignment and reassignment of the contract of sale a memorandum of rescission and returned the passbook and the assignment and reassignment thereof to appellee Leo K. Fesler, and notified him in writing of his intention to rescind and of his rescission of the acceptance of the contract and of

the acceptance of the equity for the reason that appellee Leo K. Fesler did not have an equity of $400 at the time the trade was made, and that he never did have an equity amounting to $400 in the Forest Park lot, and that for these reasons appellants would not accept the alleged equity in said lot in payment of $400 of the purchase price.

Before the commencement of this action appellants demanded of appellee Leo K. Fesler payment of a second $400, as the second and further half of the cash payment of $800 promised and stipulated by him to be paid as a part of the purchase price of the Morton Place property under the contract of sale and purchase for the said property as hereinbefore set out.

The appellant Joseph W. Thompson has never offered to restore to appellee Leo K. Fesler, before the bringing of this action, any sum of money paid by appellee Leo K. Fesler to appellant Joseph W. Thompson, which has been paid under the terms of said contract of sale and purchase, and has never offered to return or to cancel the mortgage executed by Leo K. Fesler and his wife, and has never offered to return or cancel the notes secured by said mortgage, and has never offered to return to appellees the sum of $400 cash which was paid at the time said contract was signed.

Nothing has been proved or attempted to be proved as to the actual value of the said lot 230 in Osgood's Forest Park addition, or of the actual value of Leo K. Fesler's interest therein at the time of said contract between appellees and appellants being entered into, nor at any other time, except so far as the several contracts entered into may constitute admissions of such values on April 28, 1909, and on December 7, 1912, respectively.

The court stated as conclusions of law: (1) That neither of the appellants was entitled to recover; and (2) that the appellees were entitled to a judgment for costs.

Appellants argue that we must determine from the facts, as found by the court, whether the appellee Leo K. Fesler did in fact have a $400 equity in lot 230. It

is appellants' claim that appellees agreed to pay $400 in cash, but that in lieu of such payment appellants were to accept a $400 equity in said lot, and that as a matter of fact the appellees' equity amounted to less than $200 and that, when appellants discovered that only $200 had been applied on the contract price of said lot, the remainder having been applied on interest, they were entitled to rescind that part of the agreement relating to the acceptance of said equity.

This contention is based on the theory that the provision of the contract as to the acceptance of the "equity" in lot 230 is a separate part of the agreement, having nothing whatever to do with the sale by appellants and the purchase by appellee of the Morton Place property, that the acceptance of this equity is not made a condition of the sale, and that it is not a part of the consideration of the sale.

Acting on this theory, appellants attempted to rescind so much of the contract as related to their accepting appellees' equity in said lot and to require that appellees pay them $400 cash in lieu of said equity, leaving the remainder of the contract to be enforced as written.

The general rule is that, unless a contract is clearly divisible or separable, there can be no such thing as partial rescission of it. If one party has legal grounds to cancel the contract, he will have an option either to rescind it or affirm it, but his election of either course must go to the entire contract, and not to a part of it. In other words, he must rescind *in toto* or not at all. When a contract is divisible into a number of elements or transactions, each of which is so independent of the others that it may stand or fall by itself, and good cause for its rescission exists as to one part, it may be rescinded and the rest of the contract affirmed.

The usual test of the severability of a contract is the

entirety or divisibility of the consideration. 2 Black, Rescission and Cancellation §§583, 585. In de-

4. termining whether a contract shall be treated as severable or as an entirety, the intention of the parties will control, and this intention must be determined by a fair consideration of the terms and provisions of the contract itself. *Gilmore & Co.* v. *Samuels & Co.* (1909), 135 Ky. 706, 123 S. W. 271, 21 Ann. Cas. 611.

Among the rules to be applied in determining the real intention of the parties are the following: "A contract is entire when by its terms, nature and purposes it contemplates and intends that each and all of its parts, material provisions and the consideration, are common each to the other and interdependent. A divisible contract is one in its nature and purposes, susceptible of division and apportionment, having two or more parts in respect to matters and things contemplated and embraced by it, not necessarily dependent upon each other." 7 Am. and Eng. Ency. Law (2d ed.) 95.

The test chiefly relied upon is whether the parties have apportioned the consideration on the one side to the different covenants on the other. If the consideration is apportioned so that for each covenant there is a corresponding consideration, the contract is severable. If, on the other hand, the consideration is not apportioned, and the same consideration supports all the covenants and agreements, the contract is entire. 3 Page, Contracts §1484. A contract is entire when by its terms, nature and purpose, it contemplates and intends that each and all of its parts and the consideration shall be common to each other and interdependent. On the other hand, it is the general rule that a severable contract is one which in its nature and purpose is susceptible of division and apportionment. 13 C. J. 561; *Straus* v. *Yeager* (1911), 48 Ind. App. 448, 93 N. E.

877. Such a contract possesses essential oneness in all material respects. The consideration of it is entire on both sides. *Wooten* v. *Walters* (1892), 110 N. C. 251, 14 S. E. 734. The rule, as stated in 2 Parsons, Contracts (9th ed.) 672-676, is as follows: "The question whether a contract is entire or separable is often of great importance. Any contract may consist of many parts; and these may be considered as parts of one whole, or as so many distinct contracts entered into at one time, and expressed in the same instrument, but not thereby made one contract. No precise rule can be given by which this question in a given case may be settled. Like most other questions of construction, it depends upon the intention of the parties, and this must be discovered in each case by considering the language employed and the subject-matter of the contract. * * * If the consideration to be paid is single and entire, the contract must be held to be entire, although the subject of the contract may consist of several distinct and wholly independent items."

With these rules in mind, we will proceed to an analysis of some of the cases which appellants claim uphold their contention that the agreement to accept the equity in lot 230 is severable and independent of the contract for the sale of the Morton Place property.

In *Straus* v. *Yeager, supra,* the parties entered into a contract dated October 31, 1906, wherein the appellant agreed to sell and convey for the sum of $29,850 certain real estate to the appellee. The purchase price was to be paid as follows: $50 in cash, $9,000 to be paid in cash November 13, 1906; $1,000, March 1, 1907; and the balance secured by mortgages and evidenced by notes dated March 1, 1907. It was also provided that, if either party refused to perform said contract, the other party might by suit enforce specific performance of any act required of the defendant party, or might

recover damages from the defaulting party. Following this part of the contract there was also the following provision: "It is further agreed that, in consideration of the foregoing, the second party (Yeager) hereby sells and the first party (Straus) hereby buys the stock of goods now owned by the second party, * * * said stock to be turned over to Straus Bros. & Co. on November 13, 1906, and inventory to be made, starting on the 13th day of November, or the 14th." The payment of the $9,000 not having been made, and the stock of goods not having been turned over in accordance with the contract, suit was commenced the next day to recover the $9,000. The appellee contended that the agreement to convey and the agreement to pay constituted an indivisible contract, and that before suit could be maintained to recover any part of the purchase price there should have been a tender of the deed and an offer to perform the contract to convey. The court held that the agreement of appellee to pay the $9,000 at a date prior to the time fixed for the conveyance of the real estate did not depend on the execution and delivery of the deed, and that an action would lie to recover the installment becoming due November 13, and that said sum was an advance payment not depending on the conveyance of the real estate.

In *Cole* v. *Harvey* (1909), 142 Iowa 574, 120 N. W. 97, appellant was the agent of one Russell in procuring a purchaser for certain real estate, and through his efforts two tracts of land were contracted to be sold to appellee and his two brothers. In order to protect appellant in the collection of his commission, the appellee and his brothers entered into a written agreement with appellant, whereby they agreed to hold out of the purchase money $1,200, and to pay the same to appellant, they having been authorized by Russell to make such payment to appellant. Russell failed to make the con-

veyance, and the contract to sell was abandoned. Afterwards appellee entered into a separate agreement with Russell for the purchase of one of the tracts mentioned in the first agreement and paid the whole of the purchase price to Russell. Appellant contended that his agreement with the Harvey brothers was a divisible agreement, and that on a purchase of either tract he was entitled to the $1,200 commission. The questions of divisibility and rescission were not involved.

In *Young, etc., Mfg. Co.* v. *Wakefield* (1876), 121 Mass. 91, the court held that, where a number of articles (rubber coats) are bought at the same time for different prices, even if of the same general description so that a warranty of quality would apply to each, the contract is not entire, but is in effect a separate contract for each article sold and a right of rescission exists as to each article if the warranty in regard to it is broken. The court, on page 92, said: "If but one consideration is paid for all the articles sold, so that it is not possible to determine the amount of consideration paid for each, the contract is entire."

*Bartlett* v. *Drake* (1868), 100 Mass. 174, 97 Am. Dec. 92, 1 Am. Rep. 101, was a case where the parties had entered into an agreement for the sale by appellant to appellee of two parcels of land. Appellant prepared the deed and through fraud included four parcels instead of two, and obtained the signature of appellee. The court there held that, if it could be shown that the two parcels of land were included by fraud, and that no part of the consideration was paid and received on account thereof, the conveyance as to the parcels fraudulently included could be avoided without rescinding the actual sale or setting aside the entire deed.

*Morse* v. *Brackett* (1867), 98 Mass. 205, was a case where one party purchased eight bags of wool, all supposed to be of the same kind. After delivery it was dis-

covered that one bag was different from the others. The purchaser attempted to rescind as to the one bag, but the court held that the contract was entire, and that a rescission could not be exercised as to one bag.

In *Augusta Bank* v. *Hamblet* (1853), 35 Me. 491, it was held that bonds given between the parties, both being a part of the same transaction, the one being to sell, and the other to buy, land at a stipulated price are not dependent, if they fix the time and place at which the purchaser is to make payment. The bond given by appellee in this case provided that the payment must be made prior to the time when the conveyance was to be made. The court, in discussing the contract, said: "It is well settled, when acts are to be performed by each party at the same time, neither party can maintain an action against the other without performance or an offer of performance on his part. But if it is the design of the parties that one party alone is to do the first act, after the execution of the contract, and by failure, commit a breach thereof, the other party may be excused from tendering a performance  *  *  *. But it was the contract, that the defendant on a day and place certain, should pay or offer to pay the sums,  *  *  *. On failure to do this, the bond was effectual to be against him;  *  *  *."

*McDaniels* v. *Whitney* (1873), 38 Iowa 60, was a case where the court was equally divided on the question as to the divisibility of the contract, two judges holding that it was divisible, and two that it was not.

In *Spear* v. *Snider* (1882), 29 Minn. 463, 13 N. W. 910, the plaintiff agreed to put down five wells at a stipulated price per foot. It was agreed that, in case of a failure to "get a good supply of water," plaintiff should "have no pay." It was held that the agreement was severable and that plaintiff could recover on the completion of one well.

In *Bank, etc.* v. *Union Trust Co.* (1894), 149 Ill. 343, 36 N. E. 1029, 23 L. R. A. 611, three notes had been discounted by the appellee and the proceeds placed to the credit of the payee with the appellee trust company. Before all the funds had been checked out, appellee discovered that the maker of the notes was insolvent, whereupon it charged off the amount of one note and returned it to the payee. Held, that the discounting of the three notes was a divisible contract, and that under the circumstances a rescission could be had as to one note, the court holding that: "The general rule is that when a party wishes to rescind an entire contract he must rescind it *in toto*, or not at all. * * * this is a rule of construction, based upon the intention of the parties * * * and not a rule of law, controlling that intention. * * *. 'When a consideration is divisible and the price can be apportioned, then, if a distinct divisible portion of the consideration fails, the price paid for such portion can be recovered back.'" In such a case "the purchaser may elect to take what can be delivered to him, and * * *, if the purchase money has been paid, he can recover back the excess, or, if there has been no payment, defend *pro tanto*."

In *Goodspeed* v. *Fuller* (1858), 46 Me. 141, 71 Am. Dec. 572, the grantor in a deed made a contract to sell two lots to the grantee at a fixed price for each lot. When the deed was made the grantor omitted one lot from the deed. Held, that the grantee could recover the price he was to have paid, and in fact did pay, for the omitted lot.

The remainder of the authorities cited by appellant are along the same general line as those heretofore reviewed. All of them agree that the question as to whether the contract is entire or severable is one of intention to be determined from the language used and the subject-matter of the contract.

Even though the contract should be held to be divisible, we do not believe that appellants are entitled to a rescission. This action is in the nature of a suit

5. in chancery. In *Patten* v. *Stewart* (1865), 24 Ind. 332, the court said: "It is well settled that an application for the rescission of a contract is addressed to the sound discretion of a court of chancery, but that discretion can be exercised in conformity to established principles. It is a general rule that a contract will not be rescinded, even for fraud, unless the contracting parties can be restored to the same situation occupied by them, respectively, when the contract was entered into, nor unless the application for a rescission be made within a reasonable time. * * * A party who seeks the aid of the court to compel the rescission of a contract for fraud, must show that he has exercised at least reasonable diligence in ascertaining the facts, if readily within his power, and has been prompt in seeking his remedy within a reasonable time after the facts constituting the fraud are discovered. The relief is granted to the vigilant, but denied to the negligent."

The plaintiff in the case last cited relied upon the defendant's representation that his title was clear and undisputed. He did not investigate the title at the time of his purchase, nor require an abstract of his title, nor require the defendant to exhibit his title deeds, and he never examined nor investigated the title until long afterwards. The records of the public office where the evidence of the defendant's title would likely be found were of easy access, and open to his inspection, but he failed to examine them, or to use any other means to ascertain whether the representations of the defendant were true or false. The court held there was no right to rescind.

The special findings in the present case do not dis-

close when the parties began the negotiations that resulted in the execution of the contract for the sale of the Morton Place property, but it is shown that they came to an understanding before May 1, 1912, as to all the terms of the contract, and with that settled appellees took possession of the Morton Place property on May 1, but for some undisclosed reason the contract was not reduced to writing until the following December. The evidence, however, discloses that in March, 1912, the appellee Leo K. Fesler wrote to appellant Joseph W. Thompson a letter in which something was said about buying the Morton Place property if appellants would take over appellees' contract for lot 230 as a cash payment.

The court found as a fact that appellee Leo K. Fesler made no representation as to the amount he had paid on said lot 230 or as to the balance remaining unpaid of the purchase price for the same other than that he "had an equity of $400" in said lot, and that he made such statement without any fraudulent intent and in the belief that the statement was true.

The burden was on appellants to show fraud sufficient to authorize a rescission. Fraud is a question of fact, and must be found as a fact in the special findings, and not left to inference. *Johnson* v. *Bedwell* (1895), 15 Ind. App. 236, 43 N. E. 246.

It was agreed between appellants and appellees, when appellees took possession of the property, that appellee Leo K. Fesler should keep the passbook containing the contract for the purchase of lot 230, and from certain monthly payments to be made on the Morton Place property he was to make the monthly payment of $10 to the land company on said lot 230 for and on behalf of the appellant Joseph W. Thompson. In accordance with this agreement, Mr. Fesler retained the passbook and, between May 1, 1912, and the date of the execution

of the deed by appellants, he made five monthly payments on behalf of Joseph W. Thompson.

Appellants had ample time to have investigated the facts relating to the amount which the appellee had paid toward the purchase price of said lot 230. Nothing was concealed from them and, in so far as the facts are disclosed by the special findings, they made no inquiry concerning the value of said lot 230, or of appellees' equity in it, although the evidence discloses that Mr. Thompson did make an investigation as to the value of the lot and was presumably satisfied as to its value.

The contract for the sale of the Morton Place property and the terms of payment, including the acceptance by appellants of the equity in lot 230, in our judgment, is one entire contract. The provision relating to the sale depends upon that part relating to the acceptance of the equity in lot 230. They are interdependent, and the appellants cannot adopt the parts of the contract which they think are beneficial to them and at the same time rescind a part which they deem to their disadvantage.

6.

In *Stuart* v. *Hayden* (1895), 72 Fed. 402, 18 C. C. A. 618, there had been an exchange of real estate for certain bank stock, $19,500 cash and the agreement of the purchaser to pay a $30,000 mortgage. The bank failed and there was an attempt to rescind as to the bank stock without refunding the $19,500 cash or releasing the purchaser from his agreement to pay the $30,000 mortgage on the real estate. The court, in passing on the question there involved, said: "Conceding that Gruetter & Joers were induced to make this trade by the fraudulent misstatement of Stuart, they could not rescind in the part which was burdensome and affirm it in the part which was beneficial to them. They could not rescind it as to the stock and affirm it as to the cash. They must either rescind or affirm it altogether."

So in the present case the appellants cannot rescind as to the equity in lot 230 and affirm as to the cash. In view of the conclusion which we have reached, it is not necessary for us to enter into a discussion of the meaning of the expression "$400 equity" as used in the contract.

There was no error in the conclusions of law as stated by the court. Judgment affirmed.

Nichols, J., not participating.