## THE STATE, EX REL. SPLAIN, *v.* JOYCE ET AL.

WRITTEN INSTRUMENT.—*Accepting Provisions of Written Instrument.*—A person can not avail himself of a written instrument in part and defeat its provisions in any other part; and this applies to wills, deeds, and all other instruments.

WILL.—*Construction.*—Where a bequest was made to the children of a brother and the children of an uncle of the testator, with a provision in the will, that if any one or more of the children should die "during his, her, or their majority," the share of such child or children so dying should revert to, and be equally divided between, the surviving children of the brother and of the uncle;

*Held,* that on the death of one of the children, during minority, leaving a father surviving, the father was not entitled to receive one-half of the share of such child.

SAME.—Where the word "majority," as applied to the age of a person, is used in a will, if it appears from the provisions of the will that the word "minority," or other word of similar import, was intended to have been used instead thereof, the will should be so construed.

SAME.—*Evidence.*—In a suit against a guardian, by a party claiming to be an heir of a deceased ward, for money alleged to have belonged to the ward, where the guardian answered that he received the money by the terms of a will (made a part of the answer) bequeathing it, in case of the death of the ward, to persons other than the plaintiff, the will, purporting to have been executed in another state, and the certificate of probate thereon, certified by the clerk of the court of common pleas of the county in which said suit was brought to have been filed in open court, and to be on file in his office, and to be a true copy of the will and of the certificate of probate thereon as made in said state, was admitted in evidence without objection.

*Held,* that this showed that the money was held by the guardian under the terms of the will. (BUSKIRK, C. J., dissented.)

From the Jefferson Circuit Court.

*J. L. Wilson* and *E. R. Wilson,* for appellant.

*C. E. Walker* and *W. S. Roberts,* for appellees.

DOWNEY, J.—Suit by the appellant against the appellees on a guardian's bond. Joyce was appointed guardian of Mary Ann, and certain other of the minor children of the relator, by the common pleas of Jefferson county, in this State. It is alleged that certain property, consisting of money and notes, came to and was in the hands of said guardian at said county; that **said** Mary Ann died without issue; that in consequence

The State, *ex rel.* Splain, *v.* Joyce *et al.*

thereof the relator was entitled to one-half of her estate, her mother having died prior to her decease, and her brothers and sisters the other half. It is alleged that the estate of the ward, in the hands of the guardian at the time of her death, amounted to ten thousand dollars after paying all proper charges, debts, and expenses chargeable to her share of the money, property, and estate so in the hands of the guardian. A demand, by the relator, of the amount due him is alleged and a refusal to pay, and judgment is asked for five thousand dollars.

The defendants answered as follows:

"Defendants, for answer to the complaint, say that one Robert Splain, the uncle of said deceased child, died at the city of New Orleans, State of Louisiana, testate, in 1861; that he devised property to the children of said William; that said money and property so devised to the said children came to the hands of the defendant Franklin Joyce, under an order of the court at New Orleans, to be held and administered according to the terms and provisions of said will, as such guardian; that by the terms of said will, it is provided that the shares of said children shall be paid to them respectively at the age of twenty-one years, and that the share of any child dying during its minority should go to his or her surviving brothers and sisters; that said Mary Ann died at the age of eight years, leaving brothers and sisters her surviving, and leaving no issue. They file herewith a copy of said will as part hereof. And no other property of said child ever came to the hands of said guardian, Franklin Joyce."

The copy of the will is in the record, in connection with the answer. The will appears to have been made in New Orleans, before a notary public, signed by the testator, and attested by the notary and three witnesses. It is certified by the notary, and then by the clerk of the Second District Court of New Orleans, as having been filed in his office, whose certificate is authenticated by the certificate of the sole judge of that court. It has also appended to it a certificate of the clerk of the Jefferson Common Pleas, that it had been filed in open court, and was then on file in his office. From this certificate, it also

appears that the said paper is a true copy of the will and of the certificate of probate thereon, as made in the State of Louisiana.

A demurrer to the answer, on the ground that it did not state facts sufficient to constitute a cause of action, was filed by the plaintiff, and overruled by the court. Reply in denial of the answer. Trial by the court. Finding for the defendants. Motion made by the plaintiff for a new trial. Motion overruled, and judgment on the finding.

Two errors are properly assigned:

1. Overruling the demurrer to the answer.
2. Refusing to grant a new trial.

The question first to be considered relates to the sufficiency of the answer. The relator claims the money for which he sues through Mary Ann Splain, his deceased daughter, and by no other right or title. If she had no title to it, he has none, so far as this case is concerned. The answer shows that she had no title, except by virtue of the will of her uncle William. If that will is invalid for any reason, it must follow that she had no right or title to the money sued for, and none passed at her death to the relator. It is objected that the will has not been so certified and admitted to probate in this State as to make it valid here and admissible as the will of said deceased.

The relator thus seeks to stand in the singular and inconsistent attitude of claiming that the will is valid for the purpose of vesting in his daughter a right to the money, etc., but is invalid so far as it provides that at her death the right vested in her brothers and sisters, and this, so far as this point is concerned, on account of objections which go to the validity of the entire will. This the relator can not do. A person can not accept and reject the same instrument, or, having availed himself of it in part, defeat its provisions in any other part, and this applies to deeds, wills, and all other instruments whatsoever. He who has his option whether he will affirm a particular act or contract must elect to affirm or disaffirm it altogether; he can not adopt that part which is for his own benefit and reject the rest. He can not blow hot and cold.

A person can not be allowed at once to benefit by and repudiate an instrument, but if he chooses to take the benefit which it confers, he shall likewise take the obligation and bear the *onus* which it imposes; no person can accept and reject the same instrument. This principle extends beyond the parties to the act or suit, and is binding upon or in favor of all who claim under or are connected with them as privies. Herman Estoppel, sec. 467, *et seq.* When the relator insists that the will is for any cause invalid, his position, if allowed, at once shows that his daughter acquired no interest in the the money, etc., and that he could have acquired no interest from her.

It is objected, however, that the clause of the will relating to the disposition of the money, etc., in the event of the death of one of the legatees, did not vest the share of the deceased in the surviving brothers and sisters. We set out in full this part of the will:

"I give and bequeath to my sister, Margaret Splain, now residing in Brandon, county of Cork, Ireland, the interest or usufruct of the sum of six thousand dollars for and during the term of her natural life, the principal sum, on her decease to be divided equally between the children of my brother, William Splain, and the children of my uncle, John Jennings, all now living in the State of Indiana, in the manner in which the residue of my estate, after paying all my just debts and the special bequests hereinbefore made by me, is disposed of; that is to say, as soon as possible after my decease, I wish all my debts and my special legacies to be paid, and then I desire that my executor shall invest all sums of money of which I may die possessed, or which may accrue to me, or in any other manner, in good mortgage securities, the interest accruing from which is to be applied, under the direction of my executor, to the education of the children of my said brother, William Splain, and the children of my said uncle, John Jennings, and to their support until they attain their legal majorities, when, as each so attains his or her legal majority, the share of this estate coming to him or her shall be paid over to him or her

by my executor. The said children of my brother William and my uncle, John Jennings, being herein constituted my residuary legatees. If the interest accruing from the investments so made shall exceed in amount the sum demanded to defray the expenses of the education of the said children, then such excess shall be equally divided annually between my said brother and uncle. Should one or more of the said children of my said brother and uncle die during his, her, or their majority, the share of such child or children so dying, in the bequest herein made, then shall revert to and be equally divided between the surviving children of my said brother and uncle."

Whether, on the death of one of the children, its share would go to its brothers and sisters only, or to the children of both families, we need not inquire. If it vested exclusively in the children, in either way, the relator could have no interest in it.

Counsel for appellant contend that the word "majority," where it occurs last in the above clause of the will, must be taken as expressing the meaning of the testator, while counsel for the appellee insist that it was used by mistake for or instead of the word "minority."

Words in a will are to be understood to have been used by the testator in their common and ordinary sense, and no word in a will can be rejected, and another substituted in its place, without the clearest certainty that such was the intention of the testator. We think it is apparent from the whole of that part of the will which we have set forth, that the testator intended to use the word minority, or some other word or words of similar import, and that he did not intend to control or limit the disposition of the money, etc., after the same was paid over to the children, or any of them, on their obtaining their majority.

Only one other point is urged by counsel for the appellant, and that arises under the second error assigned. It is, that it is not shown by the evidence that the estate in controversy was received by the guardian by virtue of or under the bequest in the will. There was no objection made to the

introduction of the will in evidence. This point is clearly against the appellant on the evidence contained in the bill of exceptions.

The judgment is affirmed, with costs.

BUSKIRK, C. J.—I do not agree to the judgment pronounced by the majority of the court, nor can I give my assent to the reasoning of the court by which the result was reached. The judgment of the court below should have been reversed upon two grounds:

1. The answer was fatally defective.

2. Conceding the answer to be good, there was a failure of proof to sustain its allegations.

I am so firmly convinced that the judgment is wrong, that I can not content myself with simply dissenting, but I feel it to be my duty to state the grounds of my dissent.

The substance of the answer was, that the estate in the hands of the guardian came to his wards by devise from their uncle, Robert Splain, deceased, who died testate, at New Orleans, Louisiana; that the money in his hands came to him under and by virtue of the decree of a court in the city of New Orleans, in said State of Louisiana; and that by virtue of the will of the said Robert Splain, the estate of his ward, Mary Ann, upon her death vested in her brothers and sisters. A copy of what purported to be the will of the said Robert Splain was filed with and made a part of the answer, but no copy of the decree of the court was filed.

To this answer a demurrer was overruled, and this presents the first question:

Three objections are urged by counsel for appellant against the validity of the paper filed with the answer and read in evidence as the will:

1. That the paper on its face bears no evidence, either in its form, statements, or signatures, that it is the last will of Robert Splain, but that it is only a formal statement of a notary public.

2. That it does not appear that such paper was ever proved

and admitted to probate in the State of Louisiana, where it purports to have been executed.

3. That it does not appear that such supposed will was proved in the common pleas court of Jefferson county, or that such court ordered the same to be recorded.

The first objection is based upon the theory that the will in question must be executed, proved, and admitted to probate according to the laws of this State. We think differently. This is a foreign will, and is governed by secs. 34, 35, and 36, of our statute in reference to wills. 2 G. & H. 558. Sec. 37 has no application to foreign wills. That section provides:

"No will executed in this State, and proven or allowed in any other state or country, shall be admitted to probate within this State, unless executed according to the laws of this State."

By the above section, a will executed in this State, but proved or allowed in any other state or country, is treated as a domestic will, and can not be admitted to probate in this State, unless it was executed according to the laws of this State. But when a will is executed and admitted to probate in any other state or country, its execution and probate will be governed by the laws of that state and country, and if valid by such laws, will be valid and executed in this State, if proved and recorded in this State as required by our statute.

Secs. 34, 35, and 36 provide the manner in which a foreign will shall be certified, and proved and recorded in this State, and are as follows:

"Sec. 34. Any written will that shall have been proven or allowed in any other of the United States, or in any foreign country, according to the laws of such state or country, may be received and recorded in this State, in the manner and for the purpose mentioned in the next two following sections.

"Sec. 35. Such will shall be duly certified under the seal of the court or officer taking such proof; or a copy of such will and the probate thereof shall be duly certified under the seal of his court or office, by the clerk, prothonotary, or surrogate who has the custody or probate thereof, and such certificate shall be attested and certified to be authentic and by the proper officer,

by the presiding or sole judge of the court, by whose clerk or prothonotary such certificate shall have been made, or if such will was admitted to probate before any officer, being his own clerk, his certificate of such will or record shall be attested and certified to be authentic, and by the proper officer, by the presiding or sole judge, chancellor, or vice-chancellor, or the court having supervision of the acts of such officer.

" Sec. 36. Such will or copy, and the probate thereof, may be produced by any person interested therein, to the court of common pleas of the county in which there is any estate, on which the will may operate, and if said court shall be satisfied that the instrument ought to be allowed as the last will of the deceased, such court shall order the same to be filed and recorded by the clerk; and thereupon such will shall have the same effect as if it had been originally admitted to probate, and recorded in this State." 2 G. & H. 558.

By the above sections, three things are required to render a foreign will valid in this State:

1. The will must have been proven or allowed in some other of the American states, or in some foreign country, according to the laws of such state or country.

2. Such will, after being proven or allowed, must be certified in the manner pointed out in sec. 35.

3. Such will or copy and the probate thereof must be produced to the court of common pleas of any county in which there is any estate, on which the will may operate, and if said court shall be satisfied that the instrument ought to be allowed as the last will of the deceased, such court shall order the same to be filed and recorded by the court.

When these things have been done, such will shall have the same effect as if it had been originally admitted to probate and recorded in this State.

This construction of our statute is fully supported by authority. In *Kerr* v. *Moon*, 9 Wheat. 565, the precise questions involved here arose upon a statute similar to ours, and Mr. Justice WASHINGTON says:

" We hold it to be perfectly clear, that a person claiming

under a will proved in one state, can not intermeddle with, or sue for, the effects of a testator in another state, unless the will be proved in that other state, or unless he be permitted to do so by some law of that state. In the case of *Doe* v. *M'Farland*, 9 Cranch, 151, it was decided, that letters testamentary gave to the executors no authority to sue for the personal estate of the testator, out of the jurisdiction of the power by which the letters were granted.

"2. The next reason assigned why the general principle above laid down does not apply to this case, is deemed by the court altogether insufficient; because, whatever benefit the devisees might have derived under the act of the 25th of January, 1816, had they pursued the requisitions it prescribes, as to which we give no opinion, it is a sufficient answer to the argument drawn from the act, to observe, that its requisitions were not pursued. It permits authenticated copies of wills, proved according to the laws of any state of this Union, relating to any estate within that state, to be offered for probate in the court of the county where the estate lies, and authorizes the same to be there recorded; and it then proceeds to declare the effect of such recording to be, to render the will good and valid, as if it had been made in the state, subject, nevertheless, to be contested as the original might have been. But it does not appear that the copy of this will was offered for probate and admitted to record. Had it been so offered, it might have been contested, and for anything that we can say, the sentence of the court of probate might have been not to admit it to record.

"3. The last point remains to be considered. That the objection of the validity of this will to pass the lands in controversy to the respondents, was not made in the court below, is highly probable, as we observe that it is not noticed, much less relied upon, in the answer. Nevertheless, the will, duly proved and recorded, according to the laws of Ohio, constituted the sole title under which the plaintiffs in the court below claimed the lands in dispute. It was as essential, therefore, to the establishment of that title, to allege in the bill, and to prove by the evidence, or by the admission of the defendant,

that this will had been proved and recorded, according to the laws of Ohio, as to set forth and prove the existence of the will itself. The defect in the title of the respondents appears upon the face of the bill, and as it contains no allegation that a copy of the will had been duly proved and recorded, the defendant can not be said to have admitted those facts by not denying them in his answer."

It is settled by several decisions of this court, that a foreign will can have no effect or operation until it has been proved before the common pleas court of some county where some part of the estate is, and has been ordered to be recorded. The proof has to be made to the satisfaction of the court, and the order has to be made by the court. The court in hearing the proof and making the order acts judicially, and the order should be spread upon the order book. The act of the clerk in copying such will is purely ministerial. *Rogers* v. *Stevens*, 8 Ind. 464; *Thieband* v. *Sebastian*, 10 Ind. 454.

There is no evidence in the record showing that the paper produced as the will of Robert Splain, deceased, was ever proved or admitted to probate in the State of Louisiana. The clerk simply certifies that it is a true copy of the will filed in his office. This does not amount to proof that the will was proved and admitted to probate. The statutes of Louisiana on the subject of wills, their execution, and probate were not pleaded or proved. In the absence of the statutes of that state, we can not indulge the presumption that the filing of a will in the office of the clerk has the force or effect of the proof and probate of wills which is generally required.

Nor do I think that it properly and sufficiently appears that the will was proved and ordered to be entered of record by the common pleas court of Jefferson county. The clerk certifies that the paper is a true, full, and complete copy of the last will of Robert Splain, deceased, as taken from pages 377 and 378 of some book, and that the copy of such will is on file in his office. We are not informed what book he copied from. But conceding that such certificate is sufficient to show the recording, it wholly fails to show that the requisite proof

was made, on which the court ordered the will to be allowed, as the last will of the decedent, and to be entered of record. It is true that underneath the certificate of the clerk the following appears:

"Filed in open court and entered on record on Will-Book A, pages 377 and 378.          D. G. PHILLIPS, Clerk."

The clerk can not thus make a record for this court. The statement is a mere nullity. It proves nothing. The entry upon the order book, duly certified, would be the best evidence of the order made upon sufficient proof by the court.

I have not overlooked the fact that it is insisted by counsel for appellee, that no question arises in the record in reference to the sufficiency of the will, but that the only question is as to the proper construction of such will. The point made is, that the will was admitted in evidence without objection or exception. It seems to me that the learned counsel have entirely misconceived the point made and relied upon by counsel for appellant. They do not ask for a reversal because the will was improperly admitted in evidence, but they say that conceding that it was properly admitted, it wholly fails to show that it was proved and admitted to probate in the State of Louisiana, or that it was proved, allowed, and ordered to be entered of record in the common pleas of Jefferson county.

But the will and certificates were filed with and made a part of the answer. The demurrer to the answer raised the question as to the sufficiency of the facts stated in the answer. There was an exception to the overruling of the demurrer, and this is assigned for error and raises the same question that arises upon the overruling of the motion for a new trial. The demurrer raises the question whether the facts stated constituted a defence. The overruling of the motion for a new trial raises the question whether there was a failure of proof.

In the case of *Kerr* v. *Moon, supra,* it was held, in a case much like the present one, that "it was as essential, therefore, to the establishment of that title, to allege in the bill, and to prove by the evidence, or by the admission of the defendant, that this will had been proved and recorded, according to the

The State, *ex rel.* Splain, *v.* Joyce *et al.*

laws of Ohio, as to set forth and prove the existence of the will itself."

It was held by this court, in *Curry* v. *Bratney*, 29 Ind. 195, that where a party claims some right by virtue of a will, it must be proved that such will had been admitted to probate.

The appellant claimed that he was, under and by virtue of the statute of descents of this State, the owner of one-half of the estate of which his infant daughter had died possessed. He proved the heirship and death of the decedent. This, under our laws, entitled him to one-half of such estate. The appellee sought to take the case out of the operation of our statute of descents, by showing that the money in controversy was bequeathed to the decedent by her uncle, Robert Splain, of the State of Louisiana, and that by such will it was provided, that in case of the death of one of the children of the appellant, the estate of such child should go to his brothers and sisters. The will was executed in another state. The burden was upon the appellee, who claimed by virtue of the will, to prove that the will had been admitted to probate according to the laws of the State of Louisiana, and that it had been produced to the court of common pleas of Jefferson county, in this State, duly authenticated as required by our statute, and that such court had allowed the same as the will of Robert Splain, deceased, and had ordered it to be recorded as such.

This court can not take judicial notice of the statute laws of another state. Such laws must be pleaded and proved. This was not done in this case; nor was it proved that such pretended or supposed will had been proved and allowed in this State, as required by statute. The appellant, by the plain and undoubted provisions of our statute of descents, was entitled to one-half of the estate of his deceased daughter, unless the descent of such estate was fixed and determined by the will of the said Robert Splain.

The appellee assumed to prove that, under and by virtue of a foreign will and the judgment of the court of another state, the descent was changed. It was not proved that the will

produced had been executed according to the laws of Louisiana.  It was not proved that it had been admitted to probate according to the laws of that state.  It was not proved that it had been proved and allowed by the Jefferson Common Pleas Court, according to the plain requirements of our statute.

Under these circumstances, the paper purporting to be the will of Robert Splain, deceased, was not, in the courts of this State, entitled to any more weight or consideration than if it had been a piece of blank paper.

The answer also alleged that the money in the hands of the guardian was derived under and by virtue of the decree of a court in the State of Louisiana.  The averment having been made, it should have been proved, and yet, there was not a particle of evidence tending, in the remotest degree, to prove it.

But the judgment of the court is based upon another ground, and that is, that the relator claims the money through Mary Ann Splain, his deceased daughter, and by no other right or title; that if she had no title to it he had none; and that the answer showed she had no title except through the will of her uncle; and that if the will was for any reason invalid, she had no right to the money.

In my judgment, this reasoning can not be sustained by reason and is not supported by any system of logic.  It assumes that the relator claims under the will of Robert Splain, deceased, when the entire record shows that he claims under the laws of descent in this State.  The infant daughter of the relator died in this State possessed of five thousand dollars of money in the hands of her guardian in this State.  By the laws of this State, her father is entitled to one-half of such estate.  This claim of the father is attempted to be defeated by alleging that such money came by devise, and that the will provided that in case of the death of any of the children of the relator, the estate of such child should go to the brothers and sisters of such deceased child.

This court says that if such will is invalid, Mary Ann Splain was not entitled to the money, and, therefore, her father

was not entitled to it. Is this the law? I think not. Mary Ann was a resident of this State, and died possessed of five thousand dollars; for the possession of her guardian was her possession. The law presumes that she was the lawful owner of such money. Besides, the guardian, in his application to be appointed such guardian, swore that the said Mary Ann was the owner of certain money, and in his bond as such guardian, he bound himself to account for such money to the said Mary Ann.

But it is said that the guardian, under these circumstances, has the legal right to say to the relator that if the will is invalid your child was not entitled to the money, and therefore you are not. This is reasoning in a circle. The court, having laid down the above proposition, proceed, as I have shown, without any proof of the execution or probate of the supposed will in Louisiana, and without any proof that it had been proved and allowed in this State, to place a construction upon such will and hold it valid, and that it controlled the descent of the money of which Mary Ann Splain had died seized and possessed.

In my judgment, the answer was bad, and the finding was wholly unsupported by the evidence.