CROWELL *v.* HIMES ET AL.

[No. 17,512. Filed October 29, 1946.]

*Wood & Wood,* of Angola, for appellant.

*Clarence L. Robinson,* and *Le Roy K. Schultess,* both of La Grange, for appellee.

HAMILTON, C. J.—This was a proceeding instituted by the appellant as administratrix of the estate of Phebe S. Hanes, deceased, against appellees to require them to account for and turn over to appellant certain personal property in their possession belonging to and constituting a part of the personal estate of appellant's said decedent.

The cause was submitted for trial to the court without the intervention of a jury upon an agreed stipulation of facts, which constituted all of the evidence in said cause.

The facts as stipulated were as follows:

"That the decedent, Phebe S. Hanes, died intestate on the 17th day of June, 1945, a resident of LaGrange County, Indiana;

"That thereafter Louise L. Crowell duly qualified and was appointed administratrix of said estate in the LaGrange Circuit Court of Indiana and ever since such time and still is the duly qualified and acting administratrix.

"That on the 3rd day of October, 1934, the decedent, Phebe S. Hanes, and the defendants, Ora Himes in the name and style of James Ora Himes, and Vera Himes, entered into a certain written agreement; which agreement is in the words and figures following, to-wit:

"Agreement

"THIS AGREEMENT, made and entered into by and between Phebe S. Hanes, party of the first part, and James Orie Himes and Vera Himes, parties of the second part, Witnesseth:

"That the party of the first part hereby leases to the party of the second part her farm in LaGrange County, Indiana, consisting of 160 acres, for a term

of two years from November 15th, 1934. Said real estate is described as follows, to-wit:

"East half of southeast quarter (E½ of SE¼) of Section 22, Township 36 North, Range 10 East, containing 80 acres, more or less; ·

"Also all that part of the southwest quarter of section 23, Township and range aforesaid, which lies west of the center of the Walcottville and Wright corners road, excepting therefrom five acres in the southwest corner thereof, described as follows: Commencing at the southwest corner of the above described quarter section, thence east on the south line of said section to the center of the highway known as the Walcottville and Wrights corners road; thence northeasterly to the center line of said highway to a point sufficiently far so that a line running west parallel with the south line of said quarter section to the west line of said section and thence south on the west line of said section to the place of beginning so that it will contain five acres.

"It is agreed by and between the parties hereto that the party of the second part shall cultivate said farm in a good, husbandman-like manner during the term of this lease and that the parties hereto shall share equally in the furnishing of all seed and stock needed for the proper cultivation of said farm and that the crops raised thereon during the term of this lease shall be divided equally, one-half to the party of the first part and one-half to the parties of the second part.

"It is further stipulated and agreed that the parties of the second part shall furnish all farm implements and horses necessary for the cultivation of said farm throughout the term of this lease and shall perform all the work and labor necessary for the cultivation of said farm. The parties of the second part further agree to haul all crops to market and to make division of the money received therefrom in accordance with the terms of this contract.

"It is hereby further agreed and understood that all the manure produced upon said farm shall remain thereon and that all fodder grown thereon shall be used upon said farm.

"At the expiration of this lease it is agreed that the parties of the second part shall have a first option to lease the same for another period to be agreed upon by the parties hereto.

"It is further hereby agreed and understood by the parties hereto that in the event of the death of the party of the first part during the existence of this lease, any and all personal property on the farm belonging to her shall become the property of the parties of the second part and shall be their property absolutely without any claim whatsoever on the part of the party of the first part.

"In Witness Whereof the parties hereto have hereunto set their hands on this, the 3rd day of October, 1934."

(Signatures omitted.)

"That thereafter, on the 13th day of November, 1936, the said Phebe S. Hanes and Vera Himes and Ora Himes in writing extended such instrument; which extension is in the words and figures following, to-wit:

"For and in consideration of the mutual covenants and agreements herein contained, the parties hereto hereby agree to extend the term thereof from year to year for an indefinite period of time; that in the event either of the parties hereto becomes dissatisfied and wishes to terminate the same, he may do so by giving at least ninety days notice prior to the yearly expiration thereof; that the giving of said notice by either of the said parties hereto shall terminate said lease on the date of the yearly expiration thereof without any further notice, and in the event said notice is given by the owner, the tenant agrees to vacate without any action in court.

"In Witness Whereof the parties hereto have set their hands and seals on this, the 13th day of November, 1936."

(Signatures omitted.)

"That at the time of the death of the said decedent, Phebe S. Hanes, there was located and situated on the farm described in the lease hereinbefore set out the following described personal property, to-wit: The undivided one-half (½) interest

in nine (9) milk cows, six (6) heifers, two (2) calves, five (5) brood sows, nine (9) shoats, one hundred fifty (150) bushels of old corn, six hundred ninety-six (696) bushels of wheat, seven hundred (700) bushels of oats which was then growing on the leased premises, ten (10) acres of growing pop corn, ten (10) acres of growing hay; the title to which is now in dispute between the respective parties, said defendants claiming title thereto under the written instruments hereinbefore set out."

There was a general finding for the defendants that plaintiff take nothing by her complaint and judgment was rendered accordingly.

The sole error assigned is the overruling of appellant's motion for a new trial which contains the single assignment that the decision of the court is contrary to law.

Appellant's contention that the decision of the lower court is contrary to law may be summarized as follows: That the terms of the clause of the rental farm contract between Phebe S. Hanes and the appellees, under and by virtue of which appellees predicated their claim and title to the personal property on the farm at the time of the death of said Phebe S. Hanes, are not sufficient in law to divest Phebe S. Hanes of the title to one-half of said personal property and vest title thereto in the appellees upon the theory of either (1) a gift *causa mortis*, (2) a gift *inter vivos*, or (3) a gift by testamentary disposal thereof to the appellees.

Appellees state their contention as follows: "By the terms of the rental contract existing between appellant and appellees, the appellees do not predicate their claim to the disputed personal property in question because of a gift *inter vivos* or gift *causa mortis* or by virtue of a testamentary disposition, but do base their claim to said personal property on the theory of contract—a promise to do a certain thing on an event certain—death of Phebe S. Hanes." Appellees assert that title

vested in them because of an agreement fully entered into by and between Phebe S. Hanes and themselves wherein each of said respective parties was to perform mutual acts; that appellees performed all of the conditions required of them by the contract and it would be inequitable not to enforce all of the provisions of the contract and that the provisions of the contract are indivisible.

Appellees contend further that the rental contract in no respect resembles a will and does not contain any provisions resembling those of a will. They say: "It was merely an agreement or promise to take effect at some subsequent definite date, viz: the death of Phebe S. Hanes—one of the parties to the contract. It does not attempt a testamentary disposal of property. It is only an agreement or promise, absolutely and in all events, to do a thing certain, to a designated person, based on consideration, and should be enforced," citing the cases of *Price, Admr.*, v. *Jones* (1885), 105 Ind. 543, 544, 5 N. E. 683, and *Garrigus, Admr.*, v. *The Home Frontier and Foreign Missionary Society* (1891), 3 Ind. App. 91, 94, 28 N. E. 1009.

In the case of *Price, Admr.*, v. *Jones, supra,* the court construed a promissory note which read: "One day after my death, I promise to pay to the order of Nancy M. Jones two thousand dollars, . . . ." The court says on page 544 of 105 Ind.: "The appellants insist that the instrument is an attempt to make a testamentary disposition of property, and is destitute of all legal efficacy. We can not concur in this view. There is no attempt to make a testamentary disposition of property, for the instrument contains no provisions resembling those of a will. It is a promise to pay money. It differs from an ordinary promise in the single particular that it fixes the time of payment at a period subsequent

to the promissor's death. It is, nevertheless, a promise to pay money, absolutely and at all events, to a person named, and it has, therefore, all the essential features of a promissory note."

In the case of *Garrigus, Admr.,* v. *The Home Frontier and Foreign Missionary Society, supra,* this court considered an instrument which read: "Desiring to advance the cause of missions, and to induce others to contribute to that purpose, I promise to pay to the order of the 'Home Frontier and Foreign Missionary Society of the Church of the United Brethren in Christ,' the sum of six hundred ($600) dollars, with interest from _____, at the rate of _____ per cent. per annum. Said sum and interest to be paid out of my estate one month after my death." The court held that the instrument was a promissory note and valid, citing among other authorities the case of *Price, Admr.,* v. *Jones, supra.*

In view of the difference between the facts contained in the above cases and the instant case, we do not consider either of said authorities decisive of the question presented in the instant appeal.

Likewise, the facts in the cases of *Doan, Exec.,* v. *Dow* (1893), 8 Ind. App. 324, 35 N. E. 709; and *Laboyteaux* v. *Swigart* (1885), 103 Ind. 596, 3 N. E. 373, are so dissimilar to the facts in the instant case that we do not consider either of said cases a controlling authority upon the question we are considering.

Appellees contend further that the farm rental contract is indivisible and that it must be construed in its entirety in order to ascertain the intention of the parties and, if so construed, there is ample consideration to support the clause in the contract which provides that title to any personal property upon the farm at the time of the death of Phebe S. Hanes shall pass to appellees if such death occurs while the contract is in effect.

As we view the instrument under consideration, it contains two separate contracts wholly unrelated and independent, one from the other. The first part of the contract is an ordinary farm lease, complete in all of its terms and conditions, the full performance of which is in no way related to the last clause or paragraph of the lease, which is an attempt and effort by Phebe S. Hanes to dispose of her interest in all personal property on the farm at the time of her death provided such death occurred while the lease is in full force and effect. One part of the contract covered the rental terms of the farm while the other part provided for the conditional disposition of the farm chattel property.

It is well settled that a single instrument may contain and embrace two separate and distinct contracts, each of which may be enforced independently of the other. *Armstrong* v. *Illinois Bankers Life Assn.* (1940), 217 Ind. 601, 615, 29 N. E. (2d) 953; *Straus* v. *Yeager* (1911), 48 Ind. App. 448, 454, 93 N. E. 877. An important factor in determining whether an instrument constitutes but one entire contract or constitutes two or more separate and independent contracts is whether the consideration is stated to be given for each part as a separate unit or whether there is a single consideration covering the various parts. *Armstrong* v. *Illinois Bankers Life Assn., supra.* In *Thompson* v. *Fesler* (1920), 74 Ind. App. 80, 123 N. E. 188, this court stated the test in the following language: "The test chiefly relied upon is whether the parties have apportioned the consideration on the one side to the different covenants on the other. If the consideration is apportioned so that for each covenant there is a corresponding consideration, the contract is severable. If, on the other hand, the consideration is not apportioned, and the same consideration supports all the

covenants and agreements, the contract is entire. 3 Page, Contracts § 1484. *A contract is entire when by its terms, nature and purpose, it contemplates and intends that each and all of its parts and the consideration shall be common to each other and interdependent. On the other hand, it is the general rule that a severable contract is one which in its nature and purpose is susceptible of division and apportionment.*" (Our italics.)

Referring to the contract and the memoranda of extensions thereof, we find that Phebe S. Hanes never intended to, and did not, divest herself of the title to the personal property on the farm during her lifetime and at the time of her death the title to such personal property was vested in her. The last clause in the original contract, under which appellees claim title to the disputed personal property, expressly provides that the title should not pass until after the death of Phebe S. Hanes while in the memoranda of extensions it is provided that said Phebe S. Hanes could terminate the contract at the expiration of any year and, if she did, the appellees would vacate the premises. In such event, Phebe S. Hanes retained her one-half interest in all personal property on the farm owned jointly by the parties. Thus, it seems to us that the provisions in the instrument under consideration were divisible under the rule as stated in *Thompson* v. *Fesler, supra; Armstrong* v. *Illinois Bankers Life Assn., supra.*

We believe that the law as declared and established in the case of *Moore, Treasurer,* v. *Stephens, Executor,* (1884), 97 Ind. 271 on pages 272 and 273, is applicable to the facts in this cause and is decisive of the question involved.

· In *Moore, Treasurer,* v. *Stephens, Executor, supra,* the court considered the legal effect of an instrument which read: "At my death, my estate shall pay to

treasurer of the Benevolent Fund Society of the White River Annual Conference, and Church of the United Brethren in Christ, the sum of two hundred dollars, . . . ." The court said: "But passing these objections to the appellant's claim, we come to the consideration of the main question in the case, does the written instrument constitute a valid claim against the estate of Elizabeth Manning, deceased? We are of opinion that this question must be answered in the negative. The instrument is not the contract of Elizabeth Manning, that she will do any act, or pay the sum of money therein mentioned. It contained no admission of her indebtedness to the treasurer or the society mentioned therein, and furnished no evidence of any such indebtedness. It was simply an attempt on her part to dispose of two hundred dollars of her estate after her death. The instrument was, therefore, testamentary in its character, but it was not executed with the forms and solemnities required by our statute in the execution of a will. § 2576, R. S. 1881. As the instrument was attested and subscribed by only one witness, it was void and inoperative as a will. *Patterson* v. *Ransom,* 55 Ind. 402; *Potts* v. *Felton,* 70 Ind. 166.

"When a written instrument, on its face and in its true character, is merely a will, but has not been properly attested to give it validity as a will, the fact that it does not appear to have been revoked during the maker's life, will not render it valid after his death. *McCarty* v. *Waterman,* 84 Ind. 550, and cases cited. Until such an instrument has been duly admitted to probate, it can neither operate to vest or establish, nor be used as evidence of any right claimed thereunder. *State, ex rel.,* v. *Joyce,* 48 Ind. 310; *Pitts* v. *Melser,* 72 Ind. 469.

"We conclude, therefore, that the written instrument, filed by the appellant as a claim against the estate of

appellee's testatrix, was testamentary in its character, that it was not attested and subscribed by 'two or more competent witnesses,' that it had never been, and could not be, duly admitted to probate, and that, for these reasons, it was invalid as a claim`and wholly inoperative for any purpose."

Since, under the express provisions of the contract, Phebe S. Hanes did not pass title to the farm personal property during her lifetime but merely promised to give the same to appellees in the event of her death while the lease was in effect, we hold that upon her death her title in the farm personal property passed to and vested in appellant as her personal representative. *Smith, Administrator* v. *Ferguson* (1883), 90 Ind. 229; *Gammon Theological Seminary* v. *Robbins* (1890), 128 Ind. 85, 27 N. E. 341; *Moore, Treasurer,* v. *Stephens, Executor, supra.*

We hold further that the clause of the contract involved was an attempted testamentary disposition of personal property to take effect at the death of the owner under certain conditions and is invalid because not executed under the formalities required to make a will. Section 7-201, Burns' 1933; *Moore, Treasurer,* v. *Stephens, Executor, supra.*

The attempted transfer of title to take effect upon the death of the owner was invalid as a gift *causa mortis, Smith, Admr.,* v. *Dorsey* (1872), 38 Ind. 451; *Martin* v. *Seibert, Admr.* (1919), 71 Ind. App. 564, 125 N. E. 219; or as a gift *inter vivos. Smith, Administrator,* v. *Ferguson, supra; Michael* v. *Holland* (1942), 111 Ind. App. 34, 40 N. E. (2d) 362.

Our decision herein is based upon the wording of the contract before us and the facts as stipulated and it must not be construed as passing upon the legal effect of a contract, which expressly provided that the title to the farm personal property should pass to the appellees

upon the death of Phebe S. Hanes in consideration of specified services agreed upon to be rendered by appellees for said Phebe S. Hanes during her lifetime and which services were fully performed by appellees. Such question is not before us.

For the reasons stated, the court erred in overruling appellant's motion for a new trial.

In view of the fact that the cause was submitted upon an agreed stipulation of facts, a new trial is not necessary and the lower court is directed to vacate its finding and judgment and render judgment for appellant.

Judgment reversed and cause remanded with directions to render judgment for appellant.

DRAPER, J., dissents, with opinion, CRUMPACKER, J., concurs in dissent.

NOTE.—Reported in 69 N. E. (2d) 135.

DRAPER, J.—The agreement seems to me to be an entire, valid, enforceable contract whereby the appellees were to have the property at the death of Phebe S. Hanes if she died while it was in effect.

I, therefore, respectfully dissent.

CRUMPACKER, J., concurs in this dissent.

NOTE.—Reported in 69 N. E. (2d) 135.