**In re CAMPTOWN, LTD., Debtor.**

**Bankruptcy No. 87–7031–8P1.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Jan. 26, 1989.

As Amended April 18, 1989.*

---

* Order published at 98 B.R. 596.

Jeffrey W. Warren, Tampa, Fla., for debtor.

Milton W. Gordon, Grants Pass, Or., for Milton & Doreen Gordon, Lessees of the Debtor.

Larry Foyle, Tampa, Fla., for Camptown Lessees Assn.

## ORDER ON MOTION FOR APPROVAL OF THE REJECTION OF UNEXPIRED LEASES OF REAL PROPERTY

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matter under consideration is a Motion for Approval of the Rejection of Unexpired Leases of Real Property. The Motion is filed by Camptown, Ltd., d/b/a Camptown RV Resort & Sandlewood Mobile Home Park (Debtor). The Debtor's right to reject the unexpired leases is challenged by several of the lessees on various grounds, none of them very well articulated. Neither is the Objection filed by Milton W. Gordon and Doreen M. Gordon, who contend that if this Court authorized the rejection of these leases, it would violate the laws and the Constitution of the United States because the rejection of these leases would be tantamount to taking property without due process of law in violation of the Federal Constitution.

The facts germane and relevant to the Debtor's right to reject these leases are basically without dispute and as they appear from the record in this case are as follows:

The Debtor is currently the owner and operator of a recreational vehicle park (RV Park) located in Central Florida. The predecessor in interest of this Debtor, Camptown Industries, Inc., entered into "numerous" leases on or about December 1972. Under the terms of these leases, Camptown Industries, Inc., referred to as "Optionor", leased lots in the RV Park, specifically described in each lease by legal description. The leases specified a 99–year term, and pursuant to the leases, the lessees were required to pay "rent" for the leased property in the total amount of $4037.50 in installments set forth in the leases. The leases further provided that the entire balance of the "rent" reserved had to be paid in full on or before February 15, 1973. In addition, the leases also provided that it was the lessee's obligation to pay the property taxes attributable to the property subject to the particular lease and the lessee was required to pay $5.00 per month to the lessor for maintenance of the common areas and amenities of the RV Park. Paragraph 7 of the leases authorized the lessees to assign their rights under the lease, provided, however, that the

notification was given to the lessor of any bona fide offer received by the lessees, and the lessor had the first right of refusal and was entitled to acquire the interest of the lessee by paying to the lessee the amount of the offer received. The leases were ultimately assigned to the Debtor, who, as noted earlier, is currently the owner and operator of the RV Park and the Debtor involved in this Chapter 11 case.

It is the contention of the Debtor that in light of the changed economic conditions, the lease is burdensome, and, therefore, pursuant to § 365 of the Bankruptcy Code, the Debtor should be entitled to reject these leases. All the tenants agree that the cost of maintaining the facilities at the rate of $5.00 fixed in the original leases is clearly inadequate, and that an increase is justified. However, in opposing the Debtor's request for authority to reject these leases, the tenants contend that while it is true that the documentation of this transaction describes their interest as leases of real estate, which, therefore, could be treated as leases of nonresidential property, under the circumstances these leases are really not leases but fully executed contracts of sale in real estate, not executory, thus, not subject to rejection.

In support of this proposition, the lessees point out first, that they are no longer required to pay any lease payments since they already have paid all the rent due under the "lease" in full; second, the lease grants them the right to convey their right to use the land subject to their leases and their right of use of the land, and their right to convey and transfer and assign their right under the "lease" i.e., to use the space covered by the lease is inconsistent with the concept of ordinary leases of real property. The lessees concede that part of the "lease" which imposes the duty on the lessor to furnish maintenance of the common areas and their corresponding duty to pay the same is clearly executory in nature and, therefore, would be subject to rejection. The lessees do not oppose a rejection of this feature of the leases but contend that the amount sought for maintenance fees by the Debtor is unreasonable. Accordingly, the lessees are willing to renego-

tiate this feature of the lease and those who want maintenance stated that they are willing to pay a reasonable fee for the maintenance. It should be noted that several of the tenants are willing to forego any maintenance.

The resolution of the issues raised is not without difficulty and it is not capable of an easy resolution. First, it is true that the transaction was couched in the language of a lease of nonresidential real estate. However, as a matter of economic reality, it is in effect more than that, and it has the characteristics of a conveyance by the lessor to the tenants of almost a full ownership. This conclusion is further supported when one closely analyzes the lease. It is evident that the initial "rent" paid by the tenants which was to be paid in a few months after the execution of the lease in full was, in fact, a purchase price for the lot in question and not the rent reserved from the term of the lease, i.e., 99 years. The covenant which deals with the maintenance fee was clearly intended to be a separate and independent obligation of the tenants and not part of their obligation to pay same as "rent". Assuming, without admitting, that these leases are leases of unexpired real estate, it is clear that the assumption or rejection of same are governed by § 365 of the Bankruptcy Code. The right of the Debtor-in-Possession, when he is not the tenant but the landlord, is governed by § 365, which provides as follows:

## § 365. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

(h)(1) If the trustee rejects an unexpired lease of real property of the debtor under which the debtor is the lessor, or a timeshare interest under a timeshare plan under which the debtor is the timeshare interest seller, the lessee or timeshare interest purchaser under such lease or timeshare plan may treat such lease or timeshare plan as terminated by such rejection, where the disaffirmance by the trustee amounts to such a breach as would entitle the lessee or timeshare interest purchaser to treat such lease or

timeshare plan as terminated by virtue of its own terms, applicable nonbankruptcy law, or other agreements the lessee or timeshare interest purchaser has made with other parties; or, in the alternative, the lessee or timeshare interest purchaser may remain in possession of the leasehold or timeshare interest under any lease or timeshare plan the term of which has commenced for the balance of such term and for any renewal or extension of such term that is enforceable by such lessee or timeshare interest purchaser under applicable nonbankruptcy law.

(h)(2) If such lessee or timeshare interest purchaser remains in possession as provided in paragraph (1) of this subsection, such lessee or timeshare interest purchaser may offset against the rent reserved under such lease or moneys due for such timeshare interest for the balance of the term after the date of the rejection of such lease or timeshare interest, and any such renewal or extension thereof, any damages occurring after such date caused by the nonperformance of any obligation of the debtor under such lease or timeshare plan after such date, but such lessee or timeshare interest purchaser does not have any rights against the estate on account of any damages arising after such date from such rejection other than such offset.

It is well established that as a general proposition an executory contract must be assumed or rejected in its entirety, *In re Monsour Medical Center*, 11 B.R. 1014 (W.D.Penn.1981); *In re Rovine Corp.*, 6 B.R. 661, 666 (Bankr.W.D.Tenn.1980). It is equally true, that the mere fact that the transaction is formalized in one single instrument does not alone preclude the finding that the document itself includes two separate contracts. *Bianchi Bros. v. Gendron*, 292 Mass. 438, 198 N.E. 767 (1935); *Stoneburner v. Fletcher*, 408 N.E.2d 545 (2d DCA Ind.1980). *See* also Corbin on Contracts, Section 696. Thus, a single document may contain two distinct contracts which may be enforced independently. *Crowell v. Himes*, 117 Ind.App. 56, 69 N.E.2d 135 (1946).

Whether a contract is severable or not must, of course, be determined by the intent of the parties as evidenced by the contract. *Dozier v. Shirley*, 240 Ga. 17, 239 S.E.2d 343 (1977) The factors which courts usually consider in determining the intent includes the subject matter, nature and purpose and *apportionment of consideration of the contract. Stoneburner, supra; Florida Mtg. Financing, Inc. v. Flagler Plaza Corp.*, 308 So.2d 571 (3d DCA 1975).

In the present instance, the "lease" under consideration, in fact, includes two severable features, one to furnish maintenance and pay for same, thus executory and thus subject to rejection; the other to pay for the right to occupy and use the land "leased" is being fully executed and, therefore, no longer subject to rejection. This conclusion is based on the following:

Under this lease, as noted earlier, the so-called "initial rent" was to be paid, and in fact was paid, in full a few months after the execution of the lease. Thus, the lessees no longer have any obligation to pay rent and are entitled to use the lots leased during the term of the lease, i.e., the remaining portion of 99 years. In addition, they have a right to assign their interest in a lot leased. Thus, they no longer have any obligations under the lease concerning this right to use the leased land. On the other hand, the maintenance feature of the contract does impose a continuing duty on the lessor to furnish maintenance and the corresponding duty of the lessees to pay for the maintenance. Such arrangement is quite common in condominium projects where the unit owner who purchased the unit no longer has any obligation to pay anything with the possible exception of mortgage payments, if the transaction was financed, and still will have the obligation to make monthly payments for the maintenance of the common areas. This is true even if the unit owner paid the purchase price in full. For these reasons, it is evident that the parties intended that the two covenants of the lease shall be independent of each other and severable, and if the

covenant to pay rent is no longer operative, the payment of the maintenance fee still is.

This being so, this Court is satisfied that while the Debtor should be entitled to reject the severable portion of this lease relating to the maintenance in light of the fact that it is agreed by all that the charge of $5.00 is no longer realistic, the Debtor should not be permitted to prevent the tenants the use of the lots they occupy and to transfer their interest in the lots provided they comply with the assignment provisions of the lease. Based on the foregoing, it is

ORDERED, ADJUDGED AND DECREED that the Motion to Reject non-residential lease be, and the same is hereby, granted in part and denied in part, and the Debtor is authorized to reject its obligation with the covenant continuing in the lease relating to its obligation to furnish maintenance.

DONE AND ORDERED.